No. 57,667

BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., *Appellee-Cross/Appellant*, v. RIVERSIDE HOSPITAL, an Osteopathic Institution, *Appellant-Cross/Appellee*.

(703 P.2d 1384)

Opinion filed July 26, 1985.

*Patricia M. Dengler*, of Smith, Shay, Farmer & Wetta, of Wichita, argued the cause, and *William C. Farmer*, of the same firm, was with her on the briefs for appellant-cross/appellee.

*Charles R. Hay*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, argued the cause and was on the brief for appellee-cross/appellant.

*Thomas E. Wright*, of Fisher, Heck and Wright, P.A., of Topeka, was on the *amicus curiae* brief for the Blue Cross and Blue Shield Association.

The opinion of the court was delivered by

MCFARLAND, J.: This is a dispute between two employee health care group plans as to which plan has primary coverage and which plan has secondary coverage relative to certain medical expense claims.

## BACKGROUND FACTS

The facts are not in dispute and may be summarized as follows. Leslie Stadalman is an employee of defendant Riverside Hospital and, as such, is a "covered person" under that institution's employee health care plan. Leslie Stadalman is the wife of Gregory Stadalman. Mr. Stadalman is employed by the City of Wichita and is covered under his employer's Blue Cross-Blue Shield group health plan. The Blue Cross-Blue Shield plan provides coverage for Mr. Stadalman's dependents. In the Fall of 1982, Leslie Stadalman incurred medical expenses in the amount of $1,963.19. The Riverside plan refused to pay the claims on the basis it provided only secondary coverage. Blue

Cross-Blue Shield (plaintiff) initially refused to pay the claims for the same reason—that its plan provided only secondary coverage. Ultimately, Blue Cross-Blue Shield paid the claims, expressly reserving the right to seek contribution and indemnity from Riverside. This action resulted.

## BLUE CROSS-BLUE SHIELD PLAN

The Blue Cross-Blue Shield plan contains the following provisions:

### NON-DUPLICATION OF BENEFITS.

"M.1 *The Plans will not duplicate benefits for covered health care services for which You are eligible under any of the following Programs:*

*Group, blanket, or franchise insurance.*

Group practice, individual practice, and other prepayment coverage on a group basis. (This includes group and franchise contracts issued by Blue Cross and Blue Shield Plans.)

Labor-management trusteed plans.

Union welfare plans.

Employee benefit organization programs.

Self-insurance programs providing benefits to employees or members of the self-insurer.

Coverage under government programs (except Medicare; see Part 4, Section A.3) for which the employer must contribute or deduct from his employees' pay, or both.

"Individual health insurance contracts are not included as Programs.

"M.2 To avoid duplicate benefit payments, one Program will be 'Primary' and others will be 'Secondary'.

"a. *When the Plans are Primary, benefits will be paid without regard to other coverage.*

"b. *When the Plans are Secondary, the benefits under this Certificate may be reduced. The benefits for Covered Services will be no more than the balance of charges remaining after the benefits of other Programs are applied to Covered Services.*

"A 'Covered Service' is a health care service for which benefits are available to You under this Certificate or at least one Program. When benefits are provided in the form of services, the cash value of these services will be used to determine the amount of benefits You may receive.

"M.3 Under this Certificate, the *Plans are Secondary when:*

a. *You are covered as a dependent under this Certificate but are covered as an employee, union, or association member under another Program;* or

b. You are covered as a dependent of a female under this Certificate but as the dependent of a male under another Program; or

c. The other Program does not have a non-duplication of benefits provision; or

d. The first three rules do not apply and the other Program has been in force for You longer than this Certificate.

"In all other instances, the Plans are Primary under this Certificate." (Emphasis supplied.)

## RIVERSIDE PLAN

The Riverside Plan contains the following provisions:

"1.  ELIGIBILITY FOR COVERED PERSONS: The following persons will be eligible for coverage under the Plan;

(a) All permanent full-time employees in Active Service at their customary place of employment who work a minimum of 30 hours per week for the Employer.
(b) All other persons are excluded."

The term "covered person," only applies to Riverside employees. Coverage to a "covered person" is supplied without cost under the single plan. If family coverage is desired by the "covered person," he or she must contribute thereto. Other family members so covered are referred to as "covered dependents." The plan provides coverage for covered services on a self-insurance basis up to $20,000.00 per incident. Any amount required for covered services in excess of $20,000.00 is covered by a reinsurance contract issued to the health benefit plan.

The Riverside plan contains the further provision:

### NON-DUPLICATION OF BENEFITS

"This Plan has been *designed* by specific action of the Board of Directors of Osteopathic Hospital *to coordinate payment of benefits with other plans so as to avoid overpayments. This Plan requires that if any person covered hereunder is also covered under any other plan* (as defined below), *the other plan shall be primary and this Plan shall pay the balance of expenses up to the total eligible charges.* In no event shall the combined payments exceed 100%.

"However, it is the intent of the Plan to be primary as regard to any participant who is not covered under any other Plan as defined below.

"*Plan means any plan providing benefits or services for any health or dental care under any group, franchise, blanket insurance,* health maintenance plan, union welfare, governmental plan, or any coverage required by statute." (Emphasis supplied.)

## JUDGMENT OF THE DISTRICT COURT

The district court held the non-duplication of benefits provisions of the two plans to be conflicting and mutually repugnant and directed that the Stadalman claim be paid 50% by each plan. Both Blue Cross-Blue Shield and Riverside were aggrieved by this determination and duly appealed therefrom.

ISSUE NO. 1: WHAT EFFECT DOES THE FACT THAT THE RIVERSIDE PLAN IS AN EMPLOYEE BENEFIT PLAN UNDER THE AUSPICES OF THE EMPLOYMENT RETIRE-MENT INCOME SECURITY ACT OF 1974, 29 U.S.C. § 1001 *et seq.* (1982) (ERISA) HAVE ON THE ISSUE OF PRIMARY-SECONDARY COVERAGE PRESENTED HEREIN?

The Blue Cross-Blue Shield plan is subject to regulation by the Kansas Commissioner of Insurance. The non-duplication of benefits provision incorporated within its plan is consistent with the requirements of K.A.R. 40-4-34.

The Riverside plan is not subject to regulation by the Kansas Commissioner of Insurance. Rather, it is governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1982). ERISA, as this act is commonly referred to, was enacted to protect the interests of participants and beneficiaries of qualified employee benefit plans by improving "the equitable character and the soundness of such plans," 29 U.S.C. § 1001(c). "The Act was intended to make basic reforms, require certain disclosure and reporting procedures, and establish standards of conduct, responsibility and obligations in the area of employee pensions and other employee benefit programs." *Goben v. Barry,* 237 Kan. 822, 703 P.2d 1378 (1985). The non-duplication of benefits provision contained in the Riverside plan is, apparently, permissible under ERISA. This Riverside contention is not disputed by Blue Cross-Blue Shield.

In 29 U.S.C. § 1144 (1982), ERISA is granted the following preemption:

"(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title . . . .

. . . .

"(c) For purposes of this section:

(1) The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . .

(2) The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."

Riverside contends, in essence, that by virtue of its plan being

rooted in ERISA, it is placed in an unassailable position when challenged by a plan rooted in state law.

The preemption under ERISA is not without limits. The scope of the preemption was discussed in *Goben v. Barry*, wherein we held:

"Where state law has only an indirect effect upon employee benefit plans subject to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1982), and where it is one of general application which pertains to an area of important state concern, the federal statutes do not preempt application of state law."

"In making a determination of federal preemption, a court should examine those concerns emphasized by Congress in enacting the legislation. State law should be preempted only to the extent necessary to protect achievement of the purposes of the federal act in question." Syl. ¶¶ 2, 3.

The judgment of the district court herein had the effect of nullifying, at least in part, a provision of the Riverside plan. This does raise a serious preemption question. We do not believe, however, that resolution of the primary-secondary coverage issue herein requires such action. Rather, we believe the provisions of the plans found by the district court to be mutually repugnant can be harmonized without doing violence to the intentions of, and purposes of, either plan or their respective statutory origins.

The fact that the Riverside plan is rooted in ERISA is not, we believe, a significant factor in the determination of the issue before us. Therefore, the matter of preemption is not involved herein and, even if it were involved, the outcome of the litigation would not be affected as the applicable Kansas and federal rules relative to the interpretation and construction of contracts do not differ.

ISSUE NO. 2. UNDER THE TWO EMPLOYEE HEALTH CARE GROUP PLANS HEREIN, WHICH PLAN IS PRIMARY AND WHICH PLAN IS SECONDARY RELATIVE TO THE STADALMAN CLAIMS?

The case before us involves contract interpretation arising from an uncontroverted factual situation. As stated in *Western Cas. & Surety Co. v. Universal Underwriter Ins. Co.*, 232 Kan. 606, 657 P.2d 576 (1983), quoting *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979):

" 'When a case is submitted to the trial court on an agreed stipulation of facts

and documentary evidence, this court is afforded the same opportunity to consider the evidence as the trial court.'

" 'Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine de novo what the facts establish.' " 232 Kan. at 608.

As applicable to the narrow issue raised herein, both plans have quite similar purposes. They are group health care plans provided by employers to their employees without cost to the employees where only the employee is covered (single coverage). If the employee desires family coverage, he or she must contribute to the cost of the coverage. These plans seek to provide adequate financially responsible coverage at the lowest cost. In keeping with this goal, benefits should not be duplicated where an individual has coverage under more than one such plan—hence the need for non-duplication of benefits clauses, or as sometimes referred to, "coordination of benefits" clauses. In modern American society, husbands and wives frequently both work outside the home with each being covered by his or her own employee health care group plan. Family coverage, in such circumstances, sets up the potential for duplication of benefits where one or both has family coverage under a plan. Duplication of benefits accomplishes none of the goals of such plans, serving only to run up the cost of the plans. Hassles, such as the one before us, increase the costs of administration of the plans and can delay payment of the medical bills (or reimbursement to the employees who have previously paid the bills). Obviously, litigation of the dispute between plans as to coverage should be avoided wherever possible. For this reason, the Insurance Commissioner of Kansas requires non-duplication of benefits provisions such as included in the Blue Cross-Blue Shield plan. The provisions spell out when the plan is primary and when it is secondary in a variety of foreseeable circumstances. Specifically, K.A.R. 40-4-34 (1982 Supp.) provides:

"National association of insurance commissioners' coordination of benefit guidelines, June 1980 edition, are hereby adopted by reference subject to the following exceptions: [exceptions not applicable herein]."

The Riverside plan is not in accord with said regulation and guidelines and is not required to be.

If both plans are studied side by side, as equals, it would appear Leslie Stadalman has two secondary coverages and no primary coverage. This is an untenable position to maintain, and this led the district court to hold the plans to be mutually repugnant. This approach was followed (relative to automobile liability policies) in *Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.*, 232 Kan. 606, wherein we held:

"The 'other insurance' clauses before us are nearly identical excess coverage provisions. In discussing the general rules relative to this situation, Am. Jur. 2d states:

" '[W]here two or more policies provide coverage for the particular event and all the policies in question contain "excess insurance" clauses—it is generally held that such clauses are mutually repugnant and must be disregarded, rendering each company liable for a pro rata share of the judgment or settlement, since, if literal effect were given to both "excess insurance" clauses of the applicable policies, neither policy would cover the loss and such a result would produce an unintended absurdity.' 7A Am. Jur. 2d, Automobile Insurance § 434, pp. 87-88. Authorities in the field of insurance have similarly commented:

" 'The fact that each insurer has attempted to make his coverage "excess" would not change the result of protecting the insured up to the total of all applicable policies. The courts, which found the insured with two policies, will not leave him with none, but will require the insurers, in the ordinary instance, to prorate the loss.

" 'One of the popular approaches to prorating is to say that where one has conflicting excess clauses, they are mutually "repugnant"—in other words, they cannot be excess to each other, since they are identical. It is a sort of "After you Alphonse; no you, Gaston" act which the courts refuse to countenance.' 8A Appleman, Insurance Law and Practice § 4909 pp. 395-403 (rev. 1981).'

"Conflicting 'other insurance' excess coverage provisions are generally held to be mutually repugnant. Illustrative thereof are: *Blanchard v. Rodrique*, 340 So. 2d 1001, 1008 (La. App. 1976); *Carriers Ins. Co. v. Am. Policyholders' Ins. Co.*, 404 A.2d at 220; *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 N.J. at 562; and *Harbor Ins. Co. v. United Services Auto. Ass'n*, 114 Ariz. 58, 63, 559 P.2d 178 (Ct. App. 1976). See also *Buckeye Union Ins. Co. v. State Auto. Mutl. Ins. Co.*, 49 Ohio St.2d 213, 3 Ohio Op. 3d 330, 361 N.E.2d 1052 (1977), and generally Annot., 69 A.L.R.2d 1122.

"We conclude the conflicting 'other insurance' excess coverage provisions herein are mutually repugnant and must be disregarded." 232 Kan. at 611.

### In *Western Cas.*, we concluded:

"[T]he most appropriate method of proration here is to prorate the loss equally up to the limits of the lower policy. Inasmuch as the loss herein was less than the limits of the lower policy, the loss herein should be prorated equally between Western and Universal." 232 Kan. at 613.

The difficulties of such a proration procedure when applied to

employee health care group plans has been pointed out by Blue Cross-Blue Shield—the two plans have different deductibles, covered services, and coinsurance provisions.

Leslie Stadalman is an employee of Riverside and coverage was provided to her as a "covered person" as defined by the plan. Mrs. Stadalman, as a "covered person" (as opposed to a covered dependent), received the coverage as a part of her employment, and, as required by ERISA, was fully advised of the plan in writing. The Riverside plan was intended to provide her coverage but would not pay duplicate benefits with those she would have under another group employee plan. We believe the logical approach is to look to her own plan first in determining the effect of non-duplication of benefits provisions. The Riverside plan (repeated for convenience) provides:

"This Plan has been designed by specific action of the Board of Directors of Osteopathic Hospital to *coordinate payment of benefits with other plans so as to avoid overpayments.* This Plan requires that if any person covered hereunder is also covered under any other plan (as defined below), the other plan shall be primary and this Plan shall pay the balance of expenses up to the total eligible charges. In no event shall the combined payments exceed 100%." (Emphasis supplied.)

If Mrs. Stadalman had held two jobs with primary coverage provided by the two respective employers, the Riverside plan would intend to avoid duplication of benefits by becoming secondary. As a dependent of Gregory Stadalman under his Blue Cross-Blue Shield family plan, Leslie Stadalman has Blue Cross-Blue Shield coverage that is only excess (secondary) in nature. Her own group plan is primary unless another group plan provides primary coverage. The Blue Cross-Blue Shield plan does not provide primary coverage to Mrs. Stadalman by virtue of the fact she is a covered employee in her own group plan. Therefore, there is no potentiality for duplication of benefits or overpayment. In such circumstances, generally, the primary coverage of Riverside should pay all benefits due thereunder on the claims, and the excess claims should be submitted to Blue Cross-Blue Shield for determination of benefits due under its secondary coverage. On the specific claims involved herein, the parties do not directly address the matter of whether the Riverside plan, as the provider with primary coverage, would provide full coverage therefor. There are inferences that such is the case, but we are not satisfied that the parties have agreed such is true.

Therefore, we decline to reverse and enter judgment against Riverside for the entire amount of the claims paid by Blue Cross-Blue Shield. This aspect of the case must be determined by the district court.

We believe the result reached herein holding the Riverside plan provides primary coverage is consistent with the rationale expressed in *Northeast Dept. ILGWU v. Teamsters Local U. No. 229*, 764 F.2d 147 (3d Cir. 1985). In *ILGWU* the Third Circuit in considering conflicting coordination of benefits clauses in two ERISA employee health care benefit plans, stated:

"The general common law rule is that 'the liability of insurers under overlapping coverage policies is to be governed by the intent of the insurers as manifested by the terms of the policies which they have issued.' 16 Couch on Insurance 2d § 62:44, at 480 (rev'd ed. 1983). '(W)here such contractual provisions are not inconsistent with public policy, they will be enforced.' 8A Appleman, Insurance Law and Practice § 4907.65, at 367. Under state common law, then, 'the judicial task is first to determine from the contracts themselves what obligations the respective obligors intended to assume and then to determine whether these intentions are compatible not only each with the other but also with the insured's rights and expectations and with the controlling demands of public policy.' *Starks*, 182 N.J.Super. at 351, 440 A.2d at 1358. We believe that this mode of analysis is fundamentally sound. In the ERISA context, courts should give effect to the intent of the trustees of the competing benefit plans, as evidenced by the incorporation of 'other insurance' provisions, if the provisions are compatible, unless doing so results in the enforcement of a provision that conflicts with the provisions and policies of ERISA." 764 F.2d at 159.

The judgment of the district court is reversed and the case is remanded with directions to enter judgment against defendant consistent with this opinion.