**TIME INSURANCE COMPANY, Plaintiff,**

v.

**James H. SAMS, M.D. and Columbus Anesthesia Affiliates, Inc., Defendants.**

**Civ. A. No. EC 87–137–D–D.**

United States District Court, N.D. Mississippi, E.D.

July 20, 1988.

James E. Hughes, III, Kenna L. Mansfield, Jr., Wells, Wells, Marble & Hurst, Jackson, Miss., for plaintiff.

Thomas L. Kesler, Sams and Kesler, Columbus, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is presently before the court on the defendants' motion to dismiss. Having reviewed the parties' briefs and being otherwise fully advised in this matter, the court finds that the defendants' motion should be sustained.

### I.

### FACTUAL BACKGROUND

This is a declaratory judgment action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The plaintiff, Time Insurance Company ("Time"), is an insurance company organized and existing under the laws of the State of Wisconsin, with its principal place of business located at Milwaukee, Wisconsin. Defendant James H. Sams, M.D. ("Sams") is an adult resident citizen of Lowndes County, Mississippi. Defendant Columbus Anesthesia Affiliates, Inc. ("the Clinic"), is a corporation organized and existing under the laws of the State of Mississippi.

This action was commenced by Time, seeking a declaratory judgment and other relief from the court concerning the extent of its liability, if any, under a group insurance policy issued to Sams and the Clinic. Coverage under the policy was afforded both Sams and his dependents. Time seeks a judgment declaring: 1) whether or not Time is entitled to deduct any amount paid under a separate policy of insurance from the amount to be paid under the Time policy, or whether Time is precluded from doing so by Regulation No. 84–102, as promulgated by the Commissioner of Insurance of the State of Mississippi; and, 2) whether Sams' coverage under the Time policy is voidable as a matter of public policy because public policy would not permit Sams to reap a profit as a result of overinsurance of medical expenses. Sams has answered with a counterclaim alleging bad faith delay by Time in the payment of

claims made under the policy of insurance Time issued to Sams.

Prior to June 20, 1986, the Clinic carried a health insurance plan for its employees and their dependents with Shelter Insurance Company ("the Shelter policies"). The Shelter policies were applied for individually and were issued on an individual basis to each of the employees of the Clinic. The Shelter policies provided comprehensive medical insurance which included basic medical benefits and major medical coverage. These policies provided for the reimbursement to the insureds of most, if not all, of the medical expenses incurred by the insured. The Shelter policies were not limited benefit policies nor "daily indemnity" type policies fixing a maximum amount to be paid for each day an insured is hospitalized. The Clinic paid the premiums on these Shelter policies.

Sometime in June 1986, the Clinic reviewed its medical insurance plan and determined that medical insurance benefits could be provided for its employees and their dependents at less expense to the Clinic if it took advantage of lower group insurance premiums as opposed to the higher rates of individual premiums. On June 20, 1986, the Clinic applied to Time for coverage under a group insurance plan. The employees of the Clinic, including Sams and his wife, Lindsey O. Sams, became insured under the Time group policy as of July 1, 1986.

The evidence before the court indicates that the Clinic apparently paid the premiums on the individual Shelter policies up through June 30, 1986. At that time, the Clinic apparently ceased paying the premiums on the Shelter policies and began to make payments on the Time group policy. The Shelter policies, however, provided for a grace period for the payment of premiums of at least 30 days after the premium due date. The premium due date for the

individual Shelter policies was July 1, 1986. When the Clinic failed to pay the premiums on the individual policies on that date, having initiated coverage under the Time policy, the individual Shelter policies entered the 30–day grace period.

On July 23, 1986, Lindsey O. Sams was attacked and received severe injuries while vacationing in Florida. Sams allegedly telephoned the Clinic at that time and instructed an employee of the Clinic to pay the premium due on the individual Shelter policy which insured Sams and his wife. This employee of the Clinic apparently remitted the premium to Shelter within the grace period, thereby maintaining Sams' individual policy in full force and effect.[1]

The Time policy, like the Shelter individual policies, is a comprehensive medical insurance plan which is designed to reimburse the insured for most, if not all, of the insured's medical expenses. Because both the Time policy and Sams' individual Shelter policy were in force and effect at the time Lindsey O. Sams sustained her injuries, she was covered under both policies. Sams has submitted claims under both policies for his wife's medical expenses. Sams asserts that he is entitled to collect the full amount of his wife's medical expenses under both policies and that the insurance companies should not be permitted to coordinate benefits so that Sams will be reimbursed only once for these expenses.

Time asserts that Sams should not be permitted to collect amounts under both policies, the total of which would be approximately double the amount of medical expenses actually incurred by his wife. More than $250,000 in expenses were incurred in treating Mrs. Sams. If Sams is permitted to collect full benefits under both policies, Time argues that he will be unjustly and improperly enriched by at least $200,000 above and beyond the actual expenses incurred in the treatment of his

---

**1.** Sams avers that since the premium on the Shelter policy was paid on a monthly basis throughout 1986, the policy never entered any "grace" period. This controversy is essentially

irrelevant, since it is admitted by all parties that the premium was paid on the Shelter policy in a timely fashion, so as to maintain Sams' individ-

wife.[2]

The defendants have filed a motion to dismiss the complaint, asserting that the plaintiff does not state a claim upon which relief may be granted. Insofar as matters outside the pleadings are presented with the motion, the court treats the motion as a motion for summary judgment in accordance with Rule 12(b) of the Federal Rules of Civil Procedure.

The following language from Time's insurance contract with the Clinic is relevant to the court's ruling herein:

COORDINATION OF BENEFITS

Section B.   Definitions

1. "Plan" means any plan providing benefits or services by reason of medical or dental care or treatment, which benefits or services are provided by (i) group or blanket insurance coverage, (ii) group Blue Cross, group Blue Shield, group practice, and other group prepayment coverage, (iii) any coverage under labor-management trusted plans, union welfare plans, employer organization plans, or employee benefit organization plans and (iv) auto no-fault coverage, if coordination of benefits with such coverage is allowed by law....

3. "Allowable Expense" means any necessary, reasonable and customary item of expense....

4. "Claim Determination Period" means a "calendar year."

Section C.   Effect on Benefits

1. This provision shall apply in determining the benefits as to a person covered under this Plan for any Claim Determination Period....

2. As to any Claim Determination Period with respect to which this provision is applicable, the benefits that would be payable under this Plan in the absence of this provision for the Allowable Expenses incurred as to such person during such Claim De-

termination Period shall be reduced to the extent necessary so that the sum of such reduced benefits and all the benefits payable for such Allowable Expenses under all other Plans, except as provided in item (3) of this Section C, shall not exceed the total of such Allowable Expenses. Benefits payable under another Plan include the benefits that would have been payable had claim been duly made therefor.

*See* Exhibit A to Plaintiff's Brief in Response to Defendants' Motion to Dismiss.

## II.

### CONCLUSIONS OF LAW

The contract language set out above forms the basis of Time's argument that it is entitled to deduct from the amount payable under its policy those amounts that have been paid under the Shelter policy. Sams maintains that he is entitled to be paid full benefits under both the Time group policy and the Shelter individual policy.

As a general rule, insurance policies are to be construed in accordance with general principles of contractual construction. *Western Line Consol. School Dist. v. Continental Cas. Co.*, 632 F.Supp. 295 (N.D. Miss.1986). Whether any ambiguity in the insurance contract exists is a question of law for the court to decide. *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1175 (5th Cir.1981). When an ambiguity exists, and as a rule of construction, each and every provision of an insurance contract is to be construed strongly against the drafter. *Brander v. Nabors*, 443 F.Supp. 764 (N.D. Miss.1978), *aff'd*, 579 F.2d 888 (5th Cir. 1978). Time drafted the language in the coordination of benefits provision of the insurance contract in question here; thus, any ambiguities in those provisions will be construed against the insurer and in favor of the insured, Sams. *Cf. Williams v. Life*

---

ual policy in effect after he became covered under the Time group policy.

**2.** Sams' wife has died as a result of her injuries since the defendants filed their motion to dismiss.

*Ins. Co. of Georgia,* 367 So.2d 922 (Miss. 1979).

### A. Is Coordination of Benefits Available Under the Time Policy?

A coordination of benefits provision is a usual and typical provision seen in most, if not all, group insurance policies. The purpose of a coordination of benefits provision is to insure that the person insured under the policy will be completely reimbursed or indemnified for his expenses, but that the insured will not be unjustly enriched or allowed to reap a profit as the result of being insured under multiple policies of insurance. *See generally, Blue Cross and Blue Shield of Mississippi, Inc. v. Larson,* 485 So.2d 1071 (Miss.1986); *Blue Cross and Blue Shield of Kansas, Inc. v. Riverside Hosp.,* 237 Kan. 829, 703 P.2d 1384 (1985); 15 Anderson, *Couch on Insurance 2d,* §§ 53:337—53:335 (Rev. ed. 1983).

Because a coordination of benefits provision inures to the benefit of the insurer, the insurer usually drafts this clause of the contract. To assure that it obtains the desired result, however, the insurer must be careful in drafting its coordination of benefits provision because ambiguities in any clause of the insurance contract will be construed against the drafter. *Brander v. Nabors, supra.* In the opinion of the court, the coordination of benefits language seen in Time's contract is not adequate to provide Time the result which it seeks herein.

The specific language of the "Coordination of Benefits" language of Time's policy provides that:

> [T]he benefits that would be payable under this Plan ... shall be reduced to the extent necessary so that the sum of such reduced benefits and all benefits payable for such Allowable Expenses under all other Plans ... shall not exceed the total of such Allowable Expenses....

For this provision to come into play, the insurer must first be able to establish that another "plan" was in existence and that benefits were available and payable under that "Plan." Time has failed to make the requisite showing of the existence of another "Plan" in the case at bar.

As defined by Time, a "Plan" refers to insurance coverage which falls into one of the following four groups: (1) group or blanket insurance coverage; (2) group Blue Cross, group Blue Shield, group practice and other group prepayment coverage; (3) any coverage under labor-management trusted plans, union welfare plans, employer organization plans, or employee benefit organization plans; or (4) auto no-fault coverage if coordination of benefits with such coverage is allowed by law. Sams argues that his individual Shelter policy does not fit within any of the four groups described above. The court agrees.

The mere fact that Sams' policy was originally written with other employees' policies does not convert Sams' individual policy into a "group" policy nor into some form of employee benefit plan so as to bring Sams' policy within the contemplation of the Coordination of Benefits clause. Assuming, *arguendo,* that the individual Shelter policies qualified as a "plan" under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1), prior to June 30, 1986, the court finds that the plan ceased to exist on that date. As Sams avers, after June 30, 1986, he personally paid the premiums on his Shelter policy, treating the premiums as income from the Clinic. Thus, the Shelter policies ceased to operate as a plan "maintained by an employer or by an employee organization", 29 U.S.C. § 1002(1), after June 30, 1986.

The court rules as a matter of law that the only "Plan" in effect after July 1, 1986, as that term is defined in Time's policy, was the Time group policy. Thus, Time has failed to state a claim for declaratory relief based upon the language of its policy.

At this juncture, the court also notes that Time's attempt to limit its liability under the Coordination of Benefits language of its insurance contract apparently conflicts with Regulation No. 84–102, promulgated by the Mississippi Commissioner of Insurance and effective September 13,

1984. Regulation No. 84–102 provides in relevant part:

> Under the provisions of Title 83, Chapter 9, Section 1/25, Mississippi Code of 1972, Annotated, and other related statutes, it is hereby ordered and directed that on and after the effective date of this regulation, no insurer doing business within the State of Mississippi shall prorate or limit accident and health benefits or integrate benefits through the use of a variable deductible to a policyholder by reason of his or her ownership or coverage under other accident and health insurance policies with other insurers in instances where such policies are:
>
> (1) individually underwritten and issued;
>
> (5) are made available to the general public on an individual basis;
>
> (6) may be maintained in force by the policyholder regardless of his or her membership or connection with any particular association or organization....

See Exhibit B to Plaintiff's Brief in Response to Defendants' Motion to Dismiss.

From and after July 1, 1986, Sams' Shelter policy was individually underwritten and issued; such policy was made available to Sams on an individual basis; and Sams was permitted to maintain his individual policy in force regardless of his connection with the Clinic and coverage under the Time group policy issued for the Clinic. Accordingly, the court holds that Time's attempt to limit its liability via the Coordination of Benefits clause in its insurance contract violates Regulation No. 84–102.

**B. Is Coverage Prohibited as a Matter of Public Policy?**

Time argues alternatively that if it is not permitted to coordinate benefits under its policy, then the coverage afforded Sams and his dependents is void or voidable as being in contravention of the public policy of the State of Mississippi. Quite simply, Time is asking the court to reform or rescind its policy of insurance with Sams.

This the court cannot do unless the contract is expressly prohibited by the express terms or by fair implication of a statute or prior judicial precedent. *Brander v. Nabors, supra,* 443 F.Supp. at 772.

In support of its public policy argument, Time directs the court's attention to Miss. Code Ann. § 83–5–5 (1972), which defines a contract of insurance as follows:

> A contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction, loss or injury of something in which the assured or other party has an interest, as an indemnity therefor.

Time admits that it is unable to identify any decision from the Mississippi Supreme Court which interprets this statutory definition of the phrase "contract of insurance." [3] Time argues, however, that the Mississippi Legislature's definition of an insurance contract as one providing for indemnity has clearly expressed the public policy of the State of Mississippi that the purpose of insurance is to make the insured whole for any loss covered by the policy but not to permit unjust enrichment.

Numerous courts in other states have ruled that insurance contracts are contracts of indemnity only, and should not be entered into for the purpose of attaining profit. *See e.g., U.S.F. & G. v. Sellers,* 179 So.2d 608 (Fla.App.1965); *Ramsden v. Government Employees Ins. Co.,* 123 Ga. App. 163, 179 S.E.2d 671 (1971); *Kahn v. Continental Casualty Co.,* 325 Ill.App. 1, 59 N.E.2d 524 (1945), *rev'd,* 391 Ill. 445, 63 N.E.2d 468 (1945); *Gibson v. Metropolitan Life Ins. Co.,* 213 Kan. 764, 518 P.2d 422 (1974); *Cumis Ins. Soc., Inc. v. Republic National Bank of Dallas,* 480 S.W.2d 762 (Tex.Civ.App.1972); *Jamison v. Utah Home Fire Ins. Co.,* 559 P.2d 958 (Utah 1977).

Likewise, some courts have held that double coverage or overinsurance may violate public policy. *See Woods v. National*

---

**3.** The court notes, however, that the Mississippi Supreme Court has described the essential elements of an enforceable insurance contract as comprising "an offer and an acceptance, supported by consideration." *Krebs by and through Krebs v. Strange,* 419 So.2d 178, 181 (Miss.1982).

*Life and Accident Ins. Co.,* 166 So. 501 (La.App.1936); *Dina v. Aetna Life Ins. Co.,* 65 Misc.2d 97, 316 N.Y.S.2d 654 (Dist. Ct.1970); *Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Loc. Union No. 229 Welfare Fund,* 584 F.Supp. 68 (M.D.Pa.1983); *rev'd and remanded,* 764 F.2d 147 (3rd Cir.1985). The Mississippi Supreme Court has held that contracts or agreements which are against public policy are illegal and void. *Smith v. Simon,* 224 So.2d 565 (Miss.1969); *Mitchell v. Campbell,* 111 Miss. 806, 72 So. 231 (1916). At the same time, the Mississippi Court has held that contracting parties are to be permitted freedom of contract provided their contract does not contravene public policy. *See Blue Cross and Blue Shield of Mississippi, Inc. v. Larson,* 485 So.2d 1071 at 1073 (Miss.1986).

This brings the court to the central question presented by Time's secondary argument: would enforcement of the contract of insurance between Time and Sams violate the public policy of the State of Mississippi. In ruling on this question, the court is traveling in an area of law apparently untouched by any precedent of the Mississippi Supreme Court. Thus, the court is relegated to the familiar process of performing an *Erie*-guess concerning the course of action the Mississippi courts would take if called upon to rule on this question. *See Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir. 1986), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

In *Jackson v. Johns–Manville Sales Corp., supra,* the Fifth Circuit suggested several possible sources for discerning how the Mississippi Supreme Court would rule on a novel question of law, including: (1) lower state court decisions and Supreme Court dicta; (2) the general rule on the issue; (3) the rule in other states looked to by Mississippi courts when they formulate the substantive law of Mississippi; and (4) other available legal sources, such as treatises and law review commentaries. *Id.,* 781 F.2d at 397.

Mississippi follows the generally accepted principle of contract law that the court must, if possible, ascertain and give effect to the mutual intention of the parties so far as that may be done without contravention of legal principles. *Rubel v. Rubel,* 221 Miss. 848, 75 So.2d 59 (1954). Likewise, absent some affirmative expression of overriding public policy by the Mississippi courts or the Mississippi Legislature, the court must enforce the parties' insurance contract according to its plain meaning. *Aero Intern., Inc. v. U.S. Fire Ins. Co.,* 713 F.2d 1106 (5th Cir.1983). In construing a contract, the court should neither impose nor imply a forfeiture in the absence of a statutory provision declaring a forfeiture. *Queen Ins. Co. of America v. Delta Gin Co.,* 210 Miss. 167, 48 So.2d 866 (1950); *Gardner v. Reed,* 207 Miss. 306, 42 So.2d 206 (1949).

Pronouncements from the Mississippi Supreme Court concerning the public policy of the State of Mississippi are rare. This is understandable inasmuch as the Mississippi Court has indicated that questions of public policy are properly addressed by the Mississippi Legislature. *See Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874, 877 (Miss.1981). In an early case concerning Mississippi's valued policy statute for homeowner's fire insurance, the Mississippi Supreme Court expressed its view of the effect to be given insurance contracts freely entered into by insured and insurer:

We do not think the valued policy statute is unconstitutional ... nor are its provisions against public policy, because the insurance company is under no duty to issue insurance to a lessee for any greater amount than the value of the leasehold. It enters into the insurance contract with its eyes open and receives the premium from the lessee with full knowledge of the situation, and such a contract does not, in our judgment, come within the condemnation of "a wager or gambling contract."

In the case before us the insurance company accepted the risk, received the premium, with full information that it was insuring the leased premises in favor of the lessee, and it knew the amount named in the face of the policy would, under the statute, be recoverable in the

event of a total loss. In such a case we are not prepared to say there exists a public evil that should vitiate the contract as being against public policy. *Mississippi Fire Ins. Co. v. Planters' Bank of Tunica*, 138 Miss. 275, 283, 103 So. 84, 86 (1925).

The language above is equally applicable to the case *sub judice*. Time entered into the group insurance contract with the Clinic with its eyes open and, apparently, with full knowledge that individual contracts of insurance had existed prior to the application for the group coverage. Time accepted the risk and collected the premiums remitted by the Clinic to keep the Time policy in force and effect. There is no allegation that the individual Shelter policy which Sams maintained violated any "other insurance" clause of the Time policy or that Sams in any manner misrepresented the fact that he was maintaining separate, individual coverage. To the contrary, the evidence before the court reflects that Time apparently solicited no information concerning other insurance from Sams or the employees of the Clinic.

In this action, nevertheless, Time would have the court invalidate the group policy based upon the existence of coverage under a separate, individual policy bought and paid for by Sams. The court finds no basis in fact or law for granting the relief which Time seeks. There is no indication by Time that the maintenance by Sams of separate coverage violated the terms of the Time policy. Undoubtedly, if such other insurance were violative of Time's policy, Time would have made this point known to the court. Thus, this is not a case where "the provisions of the [insurance] contract excluded this coverage." *Cochran v. Mississippi Hospital and Medical Service*, 254 Miss. 739, 741, 182 So.2d 597, 598 (1966).

The Mississippi Supreme Court has recently ruled that a workmen's compensation carrier is not to be the beneficiary of a claimant's personal health and accident insurance policy. *Bowen v. Magic Mart of Corinth*, 441 So.2d 548 (Miss.1983). The separate coverage afforded under a personal policy, the court held, was not intended to be in lieu of compensation under the Workmen's Compensation Act. *Id.* at 550. By analogy, there is no indication that Sams' personal policy in this case was intended to be in lieu of the coverage afforded him under the Time policy. In fact, as Sams has made abundantly clear in his affidavit, he purchased this separate Shelter coverage before securing the Time policy and sought to keep the Shelter policy in force and effect even after the Time group policy was issued. *See* Affidavit of James H. Sams, M.D.

When the Time policy application was taken, Time was possessed of the authority and the ability to inquire of the applicants concerning any other insurance they maintained. False representations as to other insurance could justify voiding the policy *ab initio*. *See Highlands Ins. Co. v. Allstate Ins. Co.*, 688 F.2d 398 (5th Cir.1982) (applying Mississippi law). Time made no inquiry concerning other insurance, nor does its policy appear to contain a clause prohibiting other insurance.[4] Time, however, after having issued the group policy and collecting premiums thereon, asks the court to invalidate its policy based upon after-acquired knowledge of the availability of other coverage, stating merely that to permit Sams to recover on the Shelter policy and the Time policy would violate the public policy of the State of Mississippi.

■ The court holds that the Mississippi Supreme Court, if called upon to so hold, would not rule that multiple coverages for accident and health losses violates the public policy of Mississippi. Although such double coverage or overinsurance is contrary to the indemnity principle, which is recognized as the traditional basis of insurance law, the court finds no basis for declaring Sams' maintenance of two health and accident policies violative of the public policy of the State of Mississippi. *See* R.

---

4. Interestingly enough, the Third Circuit has ruled that "other insurance" escape clauses in ERISA covered employee benefit plans are unenforceable as a matter of law. *Northeast Dept.*

*ILGWU, supra,* at 164. Since Time's group policy would likely qualify as an ERISA plan, any "other insurance" clause contained therein would likewise be unenforceable.

Keeton, *Basic Text on Insurance Law* 88 (1971).

The court is compelled to distinguish the two cases upon which Time relies heavily in arguing that there is a public policy prohibiting duplicative health and accident policies. In *Blue Cross and Blue Shield of Mississippi, Inc. v. Larson, supra*, the Mississippi Supreme Court approved of coordination of benefits clauses as a "valid method to contain health care costs within reasonable limits by prevention of duplication of payments in excess of actual medical charges." *Id.* at 1072. The court's ruling here, however, is not inconsistent with *Larson*.

Insofar as the court has held that the coordination of benefits clause of Time's insurance contract has no applicability to this case, the ruling in *Larson* is rendered inapposite to this case. The court in *Larson* implied that its purpose was to set forth a procedure for reconciling conflicting coordination of benefits clauses in separate insurance policies. *Id.* at 1072–1073. As noted, no coordination of benefits clause applies in the case *sub judice*. Thus, the court does not have before it the type of policy language considered by the court in *Larson*. Nothing in *Larson* hints of a public policy prohibition against maintenance of multiple policies of health and accident insurance.

Time also cites a state trial court decision which is much more closely in point with the case at bar: *Prisock v. Union Fidelity Life Insurance Company*, decided by the Chancery Court of Hinds County, Mississippi on July 21, 1980. In *Prisock*, the trial court noted:

> The shocking overinsurance of the Prisocks is obviously contrary to the purpose of insurance and to the public policy of Mississippi.... Thus all the policies involved in the case are void because the Prisocks' overinsurance is contrary to public policy.

Slip op. at 51–52. (Chancery Court of Hinds County, Miss., July 21, 1980). In *Prisock*, the plaintiff had obtained some ten separate policies of health and accident insurance, many of which paid him the sum of $100–150 per week for any period during which he, his wife, or his son were confined to a hospital.

The number of policies involved and the type of coverage provided in *Prisock* is to be distinguished from the two separate policies maintained by Sams in the case *sub judice*. Time admits that the Shelter policy was not a "daily indemnity" policy similar to those involved in *Prisock*. Rather, the Shelter policy was merely a comprehensive medical policy which reimbursed for medical expenses actually incurred by the insured. Thus, the court is unpersuaded by the holding of the trial court in *Prisock* and is of the opinion that *Prisock* should be limited to the facts seen therein.

The evidence of deliberate overinsurance in *Prisock* was undeniable. Maintenance of ten separate policies providing for daily indemnity benefits is clear and convincing evidence of "a plan to bilk insurance companies." Slip op. at 52. On the other hand, as the Mississippi Supreme Court has recognized, the complexities of our society and economic demands have created a situation whereby many households are now overinsured by virtue of the employment of both spouses outside the household. *Larson, supra*, at 1072. While Sams' double coverage was not a direct result of such dual employment, Sams explains that his Shelter policy was maintained as a family policy wherein he was covered under the Time policy in order for the Clinic to qualify for a group policy rate.

■ Insurance carriers, who draft the policies they underwrite, are better qualified than their prospective insureds to prevent the obvious inequities seen in cases where insureds are permitted more than one recovery for one loss. All that carriers need do is draft into their policies appropriate "other insurance" or coordination of benefits clauses, which the courts are prepared to enforce if such provisions are not unduly restrictive. *Larson, supra*. It is not the function of the courts, however, to grant these provisions onto policies when carriers have negligently failed to do so. Likewise, the courts are not empowered to apply public policy exclusions permitting

the avoidance of valid insurance contracts absent an affirmative statement of public policy in the statutes of the State of Mississippi or decisions from the courts of Mississippi construing the subject matter at issue. *Aero Intern., Inc. v. U.S. Fire Ins. Co., supra; State v. Edward Hines Lumber Co.,* 150 Miss. 1, 115 So. 598 (1928). Time has not directed the court to any affirmative statement of public policy prohibiting maintenance of multiple policies of health and accident insurance.

Accordingly, Time's request for declaratory relief in this case must be denied. The court is of the opinion that there is no evidence upon which a judgment could be rendered for Time at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, Time has failed to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Defendants' motion for summary judgment will be sustained.

It is well recognized that the district court has wide discretion to dismiss pendent state law claims once it has dismissed all federal claims. The United States Supreme Court has suggested that the federal district courts should avoid making needless decisions of state law. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218, 228 (1966). The court having rendered summary judgment against Time on its request for a declaratory judgment, there remain no federal claims in this case. As the Fifth Circuit has indicated: "[I]n the absence of a federal claim, a district court may in its discretion, and generally should, dismiss pendent state law claims." *Slaughter v. Allstate, Inc.,* 803 F.2d 857, 858 (5th Cir.1986).

The court is not convinced that considerations of judicial economy, convenience, and fairness to litigants requires the exercise of pendent jurisdiction over defendants' state law claims. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228. Dismissal of the defendants' state law claims will not interfere with their right to fully litigate these claims in a state court action. The state law claims will therefore be dismissed without prejudice.

*Pharo v. Smith,* 621 F.2d 656, 674 (5th Cir.1980).

A separate order consistent with this opinion will be entered.