No. 54,491

WESTERN CASUALTY AND SURETY COMPANY, *Appellant,* v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, *Appellee.*

(657 P.2d 576)

Opinion filed January 14, 1983.

*C. Stanley Nelson,* of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause and was on the brief for appellant.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a dispute between two insurance companies concerning: (1) the legal effect of mutual "other insurance" excess coverage provisions and (2) whether automobile insurance mandated by the Kansas Automobile Injury Reparations Act, K.S.A. 1978 Supp. 40-3101 *et seq.* is primary coverage.

The case was submitted to the trial court on the following stipulated facts:

### "STIPULATION OF FACTS

. . . .

"1. Western [Casualty and Surety Company] and Universal [Underwriters Insurance Company] are now and have been at all material times herein insurance companies duly authorized to transact insurance business within the State of Kansas.

"2. On or about May 19, 1979, Gary Runyan, an employee of Unified School

District (U.S.D.) No. 305, rented a van from Dumars Chevrolet, Inc., and while driving it in Wichita, Kansas, collided with Shiretta Dyer's automobile, resulting in property damage to her car and personal injury to her.

"3. At the time of the accident, Dumars Chevrolet, Inc. had automobile liability insurance coverage in full force and effect for this accident under a policy issued to it by Universal providing limited liability of $250,000/$500,000/$100,000. Gary Runyan was an insured under that policy pursuant to an amendment to the policy which provided as follows:

'Paragraph IV, PERSONS INSURED, is hereby amended to include sub-paragraph (3)(c) as follows:

'(c) any other person while actually using an AUTOMOBILE covered by this Coverage Part with the permission of the NAMED INSURED; provided, however the insurance thus afforded by this sub-paragraph (c) shall not exceed the minimum limits of liability specified in the Financial Responsibility Law of the State in which the OCCURRENCE occurs.'

"4. At the time of the accident, U.S.D. #305 had automobile liability insurance coverage in full force and effect for this accident under a policy issued to it by Western, and Gary Runyan was an insured under the policy. Western's limits of liability are $100,000/$300,000/$25,000.

"5. On or about February 6, 1980, upon Western's agreement to pay fifty percent of the settlement to Shiretta Dyer with reservation of its rights for reimbursement against Universal, Universal settled and paid her claim in the amount of $3,115.36 ($3,000 for personal injury; $115.36 for property damage) and Western then paid Universal $1,557.68 (i.e. 50%).

"6. The Western policy contains the following 'other insurance' clause:

'This insurance shall be excess insurance over any other valid and collectable insurance for Bodily Injury Liability, for Property Damage Liability, and for Automobile Medical Payments.'

"7. The Universal policy contained the following 'other insurance' clause:

'All coverage provided by this Coverage Part is excess insurance over any other valid and collectable insurance.'

"8. Under these facts, the only issues that are involved in this lawsuit are:

"(1) Whether the Western and Universal policies provide prorata coverage or whether one policy provides primary coverage and the other policy provides excess coverage. If the coverage is provided on a primary/excess basis, one of the insurance companies is entitled to reimbursement from the other.

"(2) If the policies provide prorata coverage, what is the prorata responsibility of each company?"

Subsequently, the two insurance policies were admitted into evidence by agreement.

The trial court's findings and conclusions are:

"1. Gary Runyan was an insured under both insuring agreements.

"2. Both policies, under the stipulated facts, extend liability coverage in excess of any other valid and collectible insurance available.

"3. Universal Underwriters Insurance Company's 'other insurance' provision is not in contravention of the Kansas Automobile Injury Reparations Act nor

otherwise contrary to public policy.

"4. The respective excess clauses are mutually repugnant and should be disregarded, rendering each company liable for a pro rata share of the Dyer settlement.

"5. Liability should be prorated according to policy limits pertaining to property damage.

"6. Judgment should be and is hereby entered in favor of the defendant and against the plaintiff in the sum of One Thousand Thirty-eight Dollars and Forty-five Cents ($1,038.45). The costs of the action are assessed to the plaintiff."

Western appeals from the judgment.

The rules relative to appellate review of cases tried on stipulated facts are set forth in *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979), as follows:

"When a case is submitted to the trial court on an agreed stipulation of facts and documentary evidence, this court is afforded the same opportunity to consider the evidence as the trial court."

"Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine de novo what the facts establish." Syl. ¶¶ 1, 2.

The issue before us is stated as follows. Does a policy of motor vehicle liability insurance issued to a Kansas motor vehicle owner under the Kansas Automobile Injury Reparations Act (K.A.I.R.A.), K.S.A. 1978 Supp. 40-3101 *et seq.*, provide primary liability coverage to the statutorily required limits for damages arising out of the use of the insured motor vehicle with the consent of the named insured notwithstanding "other insurance" clause providing that it is ". . . excess insurance over any other valid and collectable insurance"?

The overall issue, so stated, encompasses a number of component points which are best considered individually.

Western first argues "other insurance" clauses are void as being in contravention of K.A.I.R.A. and public policy. Western concedes there is no provision in K.A.I.R.A. expressly prohibiting such clauses. Nevertheless, Western contends the Legislature by enactment of K.A.I.R.A. intended to declare such clauses void as attempts to exclude liability. In support of this argument, Western cites *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981), which held any insurance policy provision which at-

tempts to dilute, condition or limit the minimum coverage requirements of K.A.I.R.A. is void. The logic of Western's argument is difficult to follow. "Other insurance" excess coverage clauses do not seek to dilute, condition or limit statutorily mandated coverage. Rather they seek only to establish priority as to which policy should be exhausted first in satisfying the liability. We conclude such clauses are not violative of K.A.I.R.A. A similar result was reached by the Missouri Court of Appeals in *State Farm Mut. Etc. v. Universal, Etc.*, 594 S.W.2d 950 (Mo. App. 1980), wherein the validity of "other insurance" clauses was challenged. Interestingly, Universal was the insurance company asserting invalidity of "other insurance" clauses in the Missouri case.

Western argues even if "other insurance" clauses are held not to be violative of K.A.I.R.A., they are contrary to public policy. This point is wholly without merit. We see no public policy question in how insurance companies divide among themselves the loss occasioned by their communal insured. A like conclusion was reached by the Supreme Judicial Court of Maine in *Carriers Ins. Co. v. Am. Policyholders' Ins. Co.*, 404 A.2d 216, 218 (Me. 1979).

Having determined "other insurance" excess coverage clauses are neither prohibited by K.A.I.R.A. nor contrary to public policy, the next point is whether the Universal policy, having been secured by the owner of the van to comply with K.A.I.R.A., has primary liability as a matter of law. The purpose of K.A.I.R.A. is to assure motor vehicles using the public highways of Kansas have at least minimum liability insurance coverage. There is no provision in the K.A.I.R.A. directing that insurance coverage mandated by the act is to be considered as primary. In the absence of such a statutory requirement, we fail to see how the question of whether a particular coverage is primary or excess is a matter of public policy or inherent in K.A.I.R.A.

In *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 N.J. 554, 147 A.2d 529, 69 A.L.R.2d 1115 (1959), the New Jersey Supreme Court held the fact a policy was issued for compliance with the state's mandatory insurance law for leased vehicles (N.J. Stat. Ann. § 45:21-1 *et seq.*, [West], does not automatically result in primary liability attaching to that policy. In so doing, the court reasoned:

"The fact that U-Drive-It Company is required by statute to furnish insurance protection does not militate against our conclusion. The statute, *N. J. S. A.* 45:21-1 *et seq.,* requires that one engaged in the business of renting motor vehicles shall file with the clerk of the municipality where he resides or has his place of business a policy of liability insurance for the benefit of persons suffering loss or damage by reason of the operation of such motor vehicles. The insurance policy is required to provide coverage of $5,000 for injury to one person and $10,000 for injuries to two or more persons in any one accident. The purpose of the statute is to protect the public from the irresponsibility of persons operating hired motor vehicles on our highway. Clearly, when U-Drive-It Company obtained liability insurance (in this case in a greater amount than the statutory requirement) and filed its policy with the municipality, the interest of the public was secured. *The statute does not require that a policy issued in compliance therewith be primary insurance.* As already noted, had Cosmopolitan's policy not been in force, Continental would have been liable for the entire amount of the settlement. The coverage contemplated by the statute is satisfied and the public is protected within the statutory terms. *The question of whether the particular insurance is primary or excess is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk. Continental Casualty Co. v. Weekes,* 74 *So.* 2d 367, 46 *A.L.R.2d* 1159 (*Fla. Sup. Ct.* 1954); *Celina Mutual Casualty Co. v. Citizens Casualty Co.,* 194 *Md.* 236, 71 *A.2d* 20, 21 *A.L.R.2d* 605 (*Ct. App.* 1950). *Cf. Savery v. Kist,* 234 *Iowa* 98, 112, 11 *N.W.2d* 23, 29 (*Sup. Ct.* 1943)." 28 N.J. at 563-64 (Emphasis supplied.)

See also *Arditi v. Massachusetts Bonding & Insurance Co.,* 315 S.W.2d 736 (Mo. 1958).

We conclude the fact the purchase of the Universal policy was in satisfaction of K.A.I.R.A. requirements does not necessarily render said coverage primary or the Western policy coverage excess.

Having determined "other insurance" excess coverage clauses do not violate K.A.I.R.A. or public policy, and insurance obtained by an owner in compliance with K.A.I.R.A. does not necessarily make the owner's insurer primarily liable, the next point is whether the two "other insurance" clauses are mutually repugnant so as to mandate pro rata distribution of the Dyer settlement.

"Other insurance" provisions may be divided into three general categories. First, *pro rata clauses* which provide the insurer will pay its pro rata share of the loss, usually in proportion which the limits of its policy bear to the aggregate limits of all valid and collectable insurance. Second, *excess clauses* which provide the insurer's liability shall be only the amount by which the loss exceeds the coverage of all other valid and collectable insurance, up to the limits of the excess policy. Third, *escape clauses* which

provide the policy affords no coverage at all when there is other valid and collectable insurance. *State Farm Mut., Etc. v. Universal, Etc.*, 594 S.W.2d at 953.

The "other insurance" clauses before us are nearly identical excess coverage provisions. In discussing the general rules relative to this situation, Am. Jur. 2d states:

"[W]here two or more policies provide coverage for the particular event and all the policies in question contain 'excess insurance' clauses—it is generally held that such clauses are mutually repugnant and must be disregarded, rendering each company liable for a pro rata share of the judgment or settlement, since, if literal effect were given to both 'excess insurance' clauses of the applicable policies, neither policy would cover the loss and such a result would produce an unintended absurdity." 7A Am. Jur. 2d, Automobile Insurance § 434, pp. 87-88.

Authorities in the field of insurance have similarly commented:

"The fact that each insurer has attempted to make his coverage 'excess' would not change the result of protecting the insured up to the total of all applicable policies. The courts, which found the insured with two policies, will not leave him with none, but will require the insurers, in the ordinary instance, to prorate the loss.

"One of the popular approaches to prorating is to say that where one has conflicting excess clauses, they are mutually 'repugnant'—in other words, they cannot be excess to each other, since they are identical. It is a sort of 'After you Alphonse; no you, Gaston' act which the courts refuse to countenance." 8A Appleman, Insurance Law and Practice § 4909 pp. 395-403 (rev. 1981).

Conflicting "other insurance" excess coverage provisions are generally held to be mutually repugnant. Illustrative thereof are: *Blanchard v. Rodrigue*, 340 So. 2d 1001, 1008 (La. App. 1976); *Carriers Ins. Co. v. Am. Policyholders' Ins. Co.*, 404 A.2d at 220; *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 N.J. at 562; and *Harbor Ins. Co. v. United Services Auto. Ass'n*, 114 Ariz. 58, 63, 559 P.2d 178 (Ct. App. 1976). See also *Buckeye Union Ins. Co. v. State Auto. Mutl. Ins. Co.*, 49 Ohio St. 2d 213, 3 Ohio Op. 3d 330, 361 N.E.2d 1052 (1977), and generally Annot., 69 A.L.R.2d 1122.

We conclude the conflicting "other insurance" excess coverage provisions herein are mutually repugnant and must be disregarded.

The net effect of disregarding the "other insurance" clauses is that both policies herein are to be considered as affording dual primary coverage and the loss, of course, must be prorated between them. The final point then is how such loss is to be prorated between Western and Universal.

The trial court followed the majority view in the United States and prorated the loss on the basis of policy limits.

The virtues and faults of the various methods of proration were discussed by the Maine Supreme Judicial Court in *Carriers Ins. Co. v. Am. Policyholders' Ins. Co.*, 404 A.2d 216, as follows:

"Having found that both policies are to be considered 'primary,' we are brought to the question of how should the liability be prorated where the total loss does not exceed the limits of either policy. American argues that the loss should be prorated according to the policy limits. Because Carriers provided $2,990,000 of coverage compared to only $250,000 for American, appellant contends that Carriers should bear close to ninety percent of the settlement cost. Carriers, on the other hand, argues that the loss should be shared equally between the insurers, the approach adopted by the presiding Justice.

"There are three basic methods of proration. The majority rule, the one urged upon by appellant, prorates liability according to the limits contained in each policy. The next, which is seldom followed, prorates on the basis of the premiums paid to each insurer. Finally, there is a minority but growing number of courts which prorate the loss equally up to the limits of the lower policy, the approach adopted by the court below.

"Each method is grounded on the premises, often unarticulated, that on equitable principles the loss should be shared among the insurers either on the basis of the risk that they have undertaken or the benefit they have received. In its clearest expression, the majority rule has been justified on the theory that the burden imposed on each insurer is generally proportional to the benefit which he received, since the size of the premium is most always directly related to the size of the policy. *Lamb-Weston, Inc. v. Oregon Automobile Insurance Company,* [219 Or. 110] at 137, 346 P.2d [643] at 647 [(1959)]. On precisely these grounds, the majority rule has been criticized since '[i]t is commonly known that the cost of liability insurance does not increase proportionately with the policy limits.' *Cosmopolitan Mutual Insurance Company v. Continental Casualty Co.,* [28 N.J. 554] at 564, 147 A.2d [529] at 534 [(1959)]. Once minimum coverage has been obtained, significant supplemental coverage can be provided at only a modest increase in cost.

"On the other hand, if the majority rule is less equitable than that minority approach which apportions on the basis of premiums received, it has the advantage of facile application. Unless the multiple policies cover the identical risks, there would be too many variables affecting the premiums to permit them to serve as a benchmark for an equitable adjustment. *Nationwide Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company,* 209 F. Supp. 83 (N.D.W.Va. 1962).

"The minority rule adopted by the presiding Justice utilizes the best aspects of both approaches without the limitations. Like the majority rule, it is easy to administer. It would simply require each company to contribute equally until the limits of the smaller policy were exhausted, with any remaining portion of the loss then being paid from the larger policy up to its limits. *Nationwide Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company,*

[209 F. Supp. 83]; *Dairyland Insurance Company v. Drum*, 568 P.2d 459, 464 (Colo. 1977) (Carrigan, J., dissenting in part).

"Unlike the majority rule, this Solomon-like approach comports with a most basic sense of justice. *See* Exodus, ch. 21, par. 35 ('When one man's ox hurts another's ox so badly that it dies, they shall sell the live ox and divide this money as well as the dead animal they shall divide equally between them.') Moreover, the majority rule unfairly discriminates against the larger policy by apportioning the loss in proportion to the respective policy limits, utterly forgetting that both insurers, by their contracts, have in fact agreed to cover a loss up to the limits of the lesser policy. Until that point is reached, the majority rule amounts to no more than an unacceptable subsidy from the high-coverage to the low-coverage carrier. We are in complete accord with the presiding Justice when he adopted the persuasive opinion of Judge Doyle in *Ruan Transport Corp. v. Truck Rental, Inc.*, [278 F. Supp. 692] at 696 [D. Colo. 1968].

> 'The majority method of prorating operates inequitably in its differentiating treatment of the high-loss and low-loss insurer. In return for a greater premium the insurer providing higher coverage has undertaken to protect the insured against accidents involving high losses. Yet because of this undertaking to protect against high loss the larger insurer is in an unfavorable position vis-a-vis the other insurer even in cases of low loss, since under the majority method of prorating the insurer affording the greater maximum coverage pays the ·greater segment of any loss incurred, regardless of the amount of the loss. This seems inequitable since both insurers have equally undertaken to insure against the low-loss accident.'

"The majority rule would hardly encourage an insurer from [*sic*] increasing its coverage where it is aware that there is a lesser policy. It would increase the insurer's potential liability not only in the high-risk situation which the additional premiums are presumably meant to recompense, but it would have the untoward effect of increasing liability in the more likely to occur low-risk situation. Carried to its extreme, it would further increase the cost of additional insurance thereby reducing the likelihood that an insured would choose such coverage. *See Dairyland Insurance Company v. Drum*, [568 P.2d 459] (Carrigan, J., dissenting in part). The Court would be reluctant to adopt a rule which would seemingly have little social utility." 404 A.2d at 221-22.

We find the rationale of the Maine Supreme Judicial Court in *Carriers* persuasive. We conclude the most appropriate method of proration here is to prorate the loss equally up to the limits of the lower policy. Inasmuch as the loss herein was less than the limits of the lower policy, the loss herein should be prorated equally between Western and Universal.

The judgment of the district court is affirmed in part, reversed in part and remanded with directions to enter judgment prorating the loss in accordance with this opinion.

PRAGER, J., not participating.