**ALLSTATE INSURANCE COMPANY,**
an Illinois Corporation,
**Plaintiff–Appellee,**

v.

**FRANK B. HALL & CO. OF CALIFOR-NIA, a California Corporation, and Industrial Indemnity Co., a California Corporation, Defendants–Appellants.**

**No. 87CA1308.**

Colorado Court of Appeals,
Div. III.

Jan. 5, 1989.

Rehearing Denied Feb. 16, 1989.

Madden & Strate, P.C., William J. Crichton, III, Wheat Ridge, for plaintiff-appellee.

Treece and Bahr and Michael P. Bahr, Littleton, for defendants-appellants.

CRISWELL, Judge.

The defendants, Frank B. Hall & Co. of California and Industrial Indemnity Co. (Industrial Indemnity), appeal the district court's declaratory judgment that required coverage under a policy of insurance issued by Industrial Indemnity to be treated as "primary" insurance and coverage under a policy issued by plaintiff, Allstate Insurance Company (Allstate), to be treated as "excess," thereby rendering Industrial Indemnity liable to satisfy the entire liability of their mutual insured. We reverse.

Howard J. Porter (the insured) acquired an automobile liability policy from Allstate covering the automobiles owned by him. This policy generally provided primary liability insurance for the insured with a stipulated limit of $100,000. However, this policy had an "other insurance" clause, which provided that:

> "If a person insured is using a substitute private passenger *auto* or non-owned *auto, our* liability insurance will be excess over other collectible insurance. If more than one policy applies to an accident involving *your* insured *auto, we* will bear *our* proportionate share with other collectible liability insurance." (original emphasis)

In December 1983, the insured rented an automobile from a Dollar Rent–A–Car agency in Denver to which Industrial Indemnity had issued a multiple-risk insurance policy. This entire policy was not placed in the record; only parts V and VI were designated by the parties as relevant to this controversy.

Part VI of the Industrial Indemnity policy provides primary liability insurance for accidents resulting from the ownership, maintenance, or use of any of the agency's automobiles. For purposes of this coverage, anyone using one of the agency's vehicles with its permission is considered to be an "insured" and covered by part VI.

This part of the Industrial Indemnity policy has two provisions relating to "other insurance." The first applies to liability insurance issued by other carriers and is similar to the provision in the Allstate policy. It provides that:

> "if any other collectible insurance applies to a *loss* or *accident* otherwise covered by this coverage part, then *this insurance* shall be excess over such other collectible insurance...." (original emphasis)

This provision, then, purports to make Industrial Indemnity's liability coverage of

the agency's vehicles coverage excess to any other available insurance. And, since the Allstate policy is said to be excess for accidents not involving a vehicle owned by the insured, each of these excess clauses purports to make its coverage excess to the other.

The second provision says that, where Industrial Indemnity has issued two policies or two coverages applying to the same risk, the total amount payable shall not exceed the highest limit established by any one of the policies or coverages. This provision does not apply, however, "to any insurance coverages which are issued specifically as 'excess' or 'umbrella' coverages to apply as excess insurance over this insurance."

Based upon the coverage under part VI, the agency's written rental agreement with the insured advised him that he was "covered on a primary basis" with a liability insurance policy with limits meeting the minimum requirements of Colorado law.

Part V of the Industrial Indemnity policy, on the other hand, is said to provide "excess and umbrella liability insurance." As is true under part VI, a person using any automobile owned by the rental agency with the permission of the agency is also considered to be an "assured" for purposes of this part of the policy.

Under this excess and umbrella coverage, Industrial Indemnity is required to pay the amount by which an assured's "ultimate net loss" exceeds "the limits of the underlying insurances as set out in the schedule shown in the General Declarations," with a maximum limit of $1,000,000. Liability under this coverage does not attach, however, until the assured, or any underlying insurer, has paid the amount of any "underlying limits."

The parties did not place the "General Declarations" to Industrial Indemnity's policy before the trial court and they are not in the record on appeal. Nevertheless, by the parties' stipulation, we know that the policy's automobile liability coverage, part

VI, is one of the "underlying insurances," although we are not informed as to the nature of any of the other underlying insurances or the identities of the carriers providing the same.

Part V recognizes that, because it provides "excess coverage," Industrial Indemnity cannot be subrogated to all of the assured's right of recovery against other parties. It provides, therefore, that any party that pays any amount "over and above" the amount paid by Industrial Indemnity under part V shall be entitled to first reimbursement out of any subsequently recovered proceeds; Industrial Indemnity shall then be entitled to reimbursement for payments made by it under part V; and the parties providing coverage for which part V "is in excess" are entitled to the remainder.

Finally, part V has its own "other insurance" provision that says:

"If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, *other than insurance that is specifically stated to be in excess of this policy,* the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance." (emphasis supplied)

On December 31, 1983, the insured, while driving the rented automobile, struck another vehicle, seriously injuring a passenger in that other vehicle. After the passenger filed suit, a settlement agreement among the parties provided for the payment of $233,188 to the passenger. Although the parties to this litigation contributed to the funding of that settlement, such contributions were made without prejudice to the parties' right to obtain a later judicial declaration as to the respective obligations of Allstate and Industrial Indemnity under their policies. Allstate then brought this declaratory judgment action.

Industrial Indemnity admits that it is liable under part VI of its policy, which pro-

vided primary liability insurance, to pay the $25,000 limit under that coverage. It asserts, however, that, of the remaining $208,188 to be paid, Allstate must pay its policy limits of $100,000 before Industrial Indemnity becomes liable under its umbrella coverage for the remaining $108,188. The trial court concluded that the Industrial Indemnity umbrella coverage was payable before Allstate was required to pay anything. Thus, because Industrial Indemnity's umbrella coverage had a $1,000,000 limit, it was directed to pay all of the amounts due under the settlement agreement. However, we agree with Industrial Idemnity that, under the circumstances of this case, Allstate must pay the limits of its policy before Industrial Indemnity's umbrella coverage becomes liable for any payment.

## I.

For the past 35 years or so, liability insurance carriers have created a "court's nightmare" by inserting into automobile liability policies "other insurance" provisions which are designed to shift some or all of the burden of a loss covered by a policy to other policies that, through fortuitous circumstances, also cover the same risk. *See Carriers Insurance Co. v. American Home Assurance Co.*, 512 F.2d 360 (10th Cir.1975). These provisions traditionally fall into one of three general categories, popularly referred to as "pro rata," "excess," and "escape" clauses. *See generally* Alleman, *Resolving the "Other Insurance" Dilemma: Ordering Disputes Among Primary and Excess Policies*, 30 U.Kan.L.Rev. 75 (1981); Snow, *Other Insurance Clauses—Multiple Coverage*, 40 Den.L.Center J. 259 (1963).

██ A "pro rata" clause is one that reduces the carrier's liability by providing for payment of only a portion of the insured's loss, based upon the relationship between the monetary limits of the policy containing the clause and the limits of other policies that cover the risk. At the other

extreme are "escape" clauses, which are provisions stating that the policy will not cover any loss that is also covered by another policy. None of the insurance provisions involved here is either a "pro rata" or an "escape" clause.

The three clauses contained in the policies in dispute here are examples of "excess" clauses; in each case, the provision does not have the effect of allowing the carrier to "escape" from all liability under the policy, but merely purports to treat the insurance provided as "excess" insurance that covers the loss only to the extent that the loss exceeds the limits of other available insurance.

Where such excess clauses appear in each of two policies that cover the same risk, an application of the terms of both clauses would result in there being *no* primary insurance available. For this reason, courts have sought to construct various rules to determine which, if either, of the clauses should be given effect. Initially, these rules depended upon the effective date of each policy, the specificity of the language used to describe the excepted risks, or other matters that the courts concluded might be relied upon to provide some distinction between the various clauses. *See* Alleman, *supra*.

██ Presently, however, if two or more policies of the same type each contains an excess clause, and they cannot be reconciled with each other, they are declared to be repugnant. As a consequence, each policy is required to make some pro-rata payment for the loss suffered. *See Empire Casualty Co. v. St. Paul Fire & Marine Insurance Co.*, 764 P.2d 1191 (Colo.1988) (clauses juxtaposed in two otherwise excess policies); *Guaranty National Insurance Co. v. Ohio Casualty Insurance Co.*, 40 Colo.App. 494, 580 P.2d 41 (1978) (excess clauses in two otherwise primary policies), *rev'd on other grounds sub nom. Ohio Casualty Insurance Co. v. Guaranty National Insurance Co.*, 197 Colo. 264, 592 P.2d 397 (1979). *See also State Farm Mutual Automobile Insurance Co. v. Em-*

*ployers Commercial Union Insurance Co.,* 35 Colo.App. 406, 535 P.2d 266 (1975) (applying same rule to repugnant "escape" clauses contained in two otherwise primary policies).

It was, presumably, as a result of its recognition of the applicability of this rule that Industrial Indemnity agreed that the underlying coverage provided by part VI of its policy required it to pay that coverage limit of $25,000. The other insurance provision in this part says that its coverage will be in excess of any other applicable insurance, while Allstate's primary policy makes its coverage excess if the loss is occasioned by the named insured's operation of a non-owned automobile. These clauses are each contained in a policy providing primary coverage, are irreconcilable, and are repugnant to each other. Thus, absent the additional umbrella coverage provided by the Industrial Indemnity policy, the two carriers would have been required to pay for the loss on some pro-rata basis up to the limit of each policy. In view of this rule, and considering the total amount of the loss, part VI's limit of $25,000 would have been totally absorbed, regardless of the method of pro-ration between the two coverages that might have been chosen. *See Empire Casualty Co. v. St. Paul Fire & Marine Insurance Co., supra.*

Of course, if these two coverages were to be pro-rated, a question might be presented with respect to the total amount payable under their combined coverages. Because neither party raised this issue, and the trial court did not pass upon it, we shall not address it.

The question that we must address, therefore, is whether Allstate's excess clause and the excess clause contained in part V of Industrial Indemnity's policy are irreconcilable.

## II.

The excess clause in the umbrella coverage part of Industrial Indemnity's policy provides that that coverage shall be considered to be excess, except for other insurance "that is *specifically* stated to be in excess" of that coverage. (emphasis supplied) Based upon this proviso, the trial court concluded that this excess clause was not in conflict with the excess clause of the Allstate policy, because it intended to exempt from its general excess declaration those policies, like Allstate's, that contained a standard excess clause. We conclude that this was an erroneous interpretation of the Industrial Indemnity policy.

It is true that an insurance contract must, absent an ambiguity, be given effect according to the ordinary terms used by it. *In re Estate of Daigle,* 634 P.2d 71 (Colo. 1981). It is also true, however, that, in allocating the priority of the coverage of two separate policies, or in determining which of two policies is primary, a court may consider the "total policy insuring intent." *Federal Insurance Co. v. Prestemon,* 278 Minn. 218, 153 N.W.2d 429 (1967), cited with approval in *Ohio Casualty Insurance Co. v. Guaranty National Insurance Co., supra.* Thus, the nature of the policies in dispute may be considered in determining this priority. *Ohio Casualty Co. v. Guaranty National Insurance Co., supra.*

Here, the umbrella coverage of the Industrial Indemnity policy was not intended to provide primary coverage of any sort. And, this circumstance is emphasized throughout the policy, starting with the insuring clause itself (which provides for payment of an ultimate net loss only *after* the payment of the underlying insurance), continuing through the subrogation clause, and finding re-expression in the excess clause. It would, therefore, be a strange circumstance if the proviso to the excess clause were to defeat this primary purpose by rendering a private automobile liability policy, intended to operate as primary coverage in most cases, to be excess to this umbrella coverage. Yet, that would be the result if the proviso to the umbrella coverage were to be interpreted to refer to the excess clause in the Allstate policy.

■ Further, the intent of the language of the proviso cannot accurately be divined without recognizing that there has been developed a tertiary level of liability insurance, sometimes referred to as "secondary excess coverage." *See Lumbermens Mutual Casualty Co. v. Allstate Insurance Co.*, 51 N.Y.2d 651, 435 N.Y.S.2d 953, 417 N.E.2d 66 (1980). As in the case of the umbrella coverage's reference to "underlying insurance," these secondary excess policies, to be effective, must also identify, in some manner, their underlying policies. The possible existence of this type of policy is referred to in the umbrella coverage's subrogation clause. Thus, we conclude that the reference in the umbrella coverage's excess clause to a policy "that is specifically stated to be in excess" of that policy refers to a third tier of insurance that treats the umbrella coverage as underlying insurance and specifically refers to that coverage. This proviso does not refer to primary liability insurance that merely has a standard excess clause.

Thus, we conclude that the Allstate policy does not fall within the proviso to the Industrial Indemnity excess clause. Nothing within the terms used by part V of the Industrial Indemnity policy, therefore, would authorize that coverage to be treated as primary coverage. Thus, because each of these two policies has a provision that requires it to be treated as excess coverage over all other collectible insurance, the two provisions are inconsistent and repugnant.

In reaching this conclusion, we have considered the decision of the Idaho court relied upon by the trial court, *Unigard Insurance Group v. Royal Globe Insurance Co.*, 100 Idaho 123, 594 P.2d 633 (1979). However, because the court in that case, like the trial court here, failed to consider the factors outlined above, we find that decision to be unpersuasive.

## III.

The general rule, which has been adopted by Colorado, is that two inconsistent excess clauses cancel each other, so that neither is given effect and both policies must contribute to payment for the loss on some pro-rata basis. *See Empire Casualty Co. v. St. Paul Marine & Fire Insurance Co., supra.*

■ However, this rule has generally not been applied when one of the clauses is contained within what would otherwise be a primary policy, such as the Allstate policy here, and the other is contained within a policy that is designed to be an excess or umbrella policy. In these instances, it is said that the "total policy insuring intent" of the two policies requires that the umbrella coverage continue to be treated as excess, so that it is only after the exhaustion of the other policy's limits that it is held liable for the payment of any additional amounts. *Allstate Insurance Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278 (5th Cir.1971). *Accord Carrabba v. Employers Casualty Co.*, 742 S.W.2d 709 (Tex.App.1987) (rejecting the rationale of *Unigard, supra*); *State Farm Fire & Casualty Co. v. Limauro*, 65 N.Y.2d 369, 492 N.Y.S.2d 534, 482 N.E.2d 13 (1985) (citing similar decisions from eight state appellate courts and several federal courts).

Indeed, this exception to the general rule has become so widely accepted that it has recently been said that:

> "umbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, *excess provisions arising in regular policies in any manner*, or escape clauses." J.A. Appleman, Insurance Law & Practice § 4909.85 (1981) (emphasis supplied).

Here, the Allstate policy was designed to provide primary protection to the insured, and it was only through the device of its excess clause that an attempt was made to declare it excess to "other collectible insurance." Similarly, the coverage provided by part VI of the Industrial Indemnity policy provided primary protection, except to the

extent that its excess clause attempted to limit its risk if other insurance was available. The umbrella coverage, on the other hand, was not designed to provide *any* primary automobile liability insurance under *any* circumstances.

While the issue has not been previously presented to an appellate court in Colorado, we conclude that, in these circumstances, the exception to the general rule, which has been adopted by a substantial number of courts, should also be adopted by us. Under that exception, the Allstate policy must be considered to be primary insurance, and the umbrella coverage of the Industrial Indemnity policy must be considered to provide only excess coverage to the Allstate coverage.

The judgment of the trial court is reversed, and the cause is remanded to that court with directions to enter a declaratory judgment consistent with the views contained herein.

KELLY, C.J., and VAN CISE, J., concur.