### AVIS RENT–A–CAR SYSTEM, INC., a/k/a Avis, Inc., a Corporation, Plaintiff–Appellee,

v.

### ALLSTATE INSURANCE COMPANY, an Insurance Corporation, Defendant–Appellant.

No. 95CA0431.

Colorado Court of Appeals, Div. IV.

June 27, 1996.

Rehearing Denied Aug. 22, 1997.

Certiorari Granted May 19, 1997.

Anderson, Campbell & Laugesen, P.C., Richard W. Laugesen, Denver, for Plaintiff–Appellee.

Walberg & Dagner, P.C., Deana R. Dagner, Matthew A. Holmes, Wendelyn K. Walberg, Englewood, for Defendant–Appellant.

Opinion by Judge BRIGGS.

In this action for declaratory judgment, defendant, Allstate Insurance Company (Allstate), appeals the order of the trial court denying its motion for summary judgment and granting that of plaintiff, Avis Rent–A–Car System, Inc. (Avis). We reverse and remand the cause for further proceedings.

Allstate issued an automobile insurance policy to an insured that included liability coverage while using a non-owned auto with the permission of that auto's owner. The insured rented a car from Avis and was involved in an accident with another vehicle, which sustained substantial damage.

Because of a dispute between Allstate and Avis as to which was the primary insurer for the insured's liability, Avis filed this action. Both parties filed motions for summary judgment.

The trial court determined that, as a result of 1992 amendments to § 10–4–707, C.R.S. (1994 Repl.Vol. 4A), the liability coverage of Allstate and not Avis was primary. The court likewise rejected Allstate's contention that the clause in the Avis policy making its liability coverage excess was in violation of statutory requirements for minimum coverage, and refused to give effect to an excess clause in Allstate's policy because of its determination that Allstate's coverage was primary.

## I.

Allstate contends the trial court erred when it determined that the result of the 1992 statutory amendments was to make the

liability insurance of an insured driving a non-owned vehicle primary over the liability insurance of the vehicle's owner. We agree.

Before the amendments enacted in 1992, the pertinent statutory sections provided as follows:

(1) The coverages described in section 10–4–706(1)(b) to (1)(e) shall be applicable to:

(a) Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of this part 7;

(b) Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this subsection (1), if the relative at the time of the accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere), except where the relative is injured as a result of the use or operation of his own motor vehicle not actually covered under the terms of this part 7;

(c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the described motor vehicle with the consent of the insured or while a pedestrian if injured in an accident involving the described motor vehicle.

Section 10–4–707(1), C.R.S. (by recodification after enactment as Colo. Sess. Laws 1973, ch. 94, § 13–25–7(1)).

(4) When an accident involves the operation of a motor vehicle by a person who is neither the owner of the motor vehicle involved in the accident nor an employee of the owner, and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the policy insuring the said operator ... and any policy under which the owner

is an insured shall afford excess coverage....

Colo. Sess. Laws 1979, ch. 74, § 10–4–707(4).

(5) When a person injured is a person for whom benefits are required to be paid under the 'Workmen's Compensation Act of Colorado', the coverages described in section 10–4–706(1)(b) to (1)(e) shall be reduced to the extent that benefits are actually available and covered under said act within the time period for payment of benefits under this part 7 prescribed by section 10–4–708.

Colo. Sess. Laws 1990, ch. 62, § 10–4–707(5).

The supreme court in 1976 concluded that the phrase "all coverages" in § 10–4–707(4) refers only to those coverages providing personal injury protection (PIP) benefits under §§ 10–4–706(1)(b) to 10–4–706(1)(e), the statutory provisions then referenced in §§ 10–4–707(1) and 10–4–707(5). *See Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976).

In 1992, the General Assembly amended the Colorado Auto Accident Reparations Act to include in § 10–4–706 a new subsection (3), providing for low-income alternative PIP coverage in automobile insurance policies. *See* § 10–4–706(3), C.R.S. (1994 Repl.Vol. 4A). The 1992 amendments did not include any change to § 10–4–707(4). However, the amendments revised §§ 10–4–707(1) and 10–4–707(5) by deleting the references in them to "section 10–4–706(1)(b) to (1)(e)" and making the references instead to "section 10–4–706," with no subsections indicated. *See* §§ 10–4–707(1) & 10–4–707(5), C.R.S. (1994 Repl.Vol. 4A).

Avis contended, and the trial court agreed, that the amendments effectively incorporated the liability coverage described in § 10–4–706(1)(a) into § 10–4–707(4). The interpretation urged by Avis, in light of the reasoning in *Travelers,* is not without merit. Ultimately, however, that interpretation can be sustained only by reading the amendments in isolation. *See Zaner v. City of Brighton,* 917 P.2d 280 (Colo. 1996)(courts must be careful not to determine intent by considering language in isolation when other relevant provisions cast doubt upon that interpretation).

Nothing in the plain language of § 10–4–707 as amended indicates a change in § 10–4–707(4). The amendments to §§ 10–4–707(1) and 10–4–707(5) make no reference to § 10–4–707(4). More importantly, the subsections in § 10–4–707 which were amended in 1992 to change their references to "section 10–4–706" on their face do not address liability coverage even after their amendment.

The specific subject of § 10–4–707(1) before and after the amendments is PIP coverage. For example, after the 1992 amendments, § 10–4–707(1)(a), C.R.S. (1994 Repl. Vol. 4A) makes the coverages "described in § 10–4–706" applicable to an accidental bodily injury "sustained by the named insured when injured in an accident involving any motor vehicle." However, liability coverage provides compensation to someone *other than* the insured for whose injuries and damages the insured is liable. Only under PIP coverage does an insured receive compensation for bodily injuries. Thus, the reference to § 10–4–706 cannot include liability coverage in the circumstances described in § 10–4–707(1)(a).

Likewise, the present version of § 10–4–707(5), as it did before 1992, deals with the coordination of workers' compensation and PIP benefits. *See Garcia v. State Farm Mutual Insurance Co.,* 920 P.2d 843 (Colo. App.1995). It does not address liability coverage.

Even if we were to conclude that the statute is ambiguous, the legislative history of the 1992 amendments indicates that the amendments to §§ 10–4–707(1) and 10–4–707(5) were merely "technical" so that the low-income PIP coverage described in the new § 10–4–706(3) would be included in the references in §§ 10–4–707(1) and 10–4–707(5). *See* Tape Recordings of Testimony Before Senate Committee of the Whole on H.B. 92–1176, 58th General Assembly, Second Regular Session (March 24, 1992).

We therefore conclude that the 1992 amendments to § 10–4–707 did not change the rule of primary coverage stated in § 10–4–707(4). That rule, according to the supreme court's holding in *Travelers Indemnity Co. v. Barnes, supra,* pertains only to PIP coverage. Hence, the trial court erred in construing the statute to require that Allstate provide primary liability coverage.

## II.

■ Allstate next contends that Avis alone must provide primary liability coverage. Its reasoning is that, because Avis is expressly required by statute to provide liability coverage for the vehicles it owns, the "other insurance" excess clause in the Avis rental agreement is contrary to a legislatively pronounced public policy. Avis does not raise any similar challenge to Allstate's excess clause. Hence, if we were to accept Allstate's contention, Avis would be the only provider of primary liability coverage in the circumstances presented here. However, we conclude that the "other insurance" clause in the Avis rental agreement does not violate public policy.

Several divisions of this court have held that competing excess clauses in circumstances similar to those presented here are mutually repugnant and for this reason both must be considered void. *See Allstate Insurance Co. v. Frank B. Hall & Co.,* 770 P.2d 1342 (Colo.App.1989); *Brna v. Farmers Insurance Exchange,* 897 P.2d 851 (Colo.App. 1994); *Guaranty National Insurance Co. v. Ohio Casualty Insurance Co.,* 40 Colo.App. 494, 580 P.2d 41 (1978), *rev'd on other grounds,* 197 Colo. 264, 592 P.2d 397 (1979). These holdings at least implicitly include the determination that the owner's excess clause was otherwise enforceable. *But see United States Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc.,* 842 P.2d 208 (Colo.1992)(Kirshbaum, J., specially concurring).

In light of the existing precedent and the fact that the General Assembly has chosen not to address the primacy of liability coverage as it has that of PIP coverage, despite the supreme court's holding twenty years ago in *Travelers Indemnity Co. v. Barnes, supra,* we are hesitant to conclude that the excess clause in the Avis rental agreement is void as against any legislatively declared public policy. Such an argument is better addressed to the General Assembly.

### III.

Allstate finally contends the trial court erred in giving effect to the Avis excess clause and not its own excess clause. Because we have concluded that § 10–4–707 did not make the liability coverage provided by Allstate primary, we agree and conclude that, because the excess clauses in the parties' policies are mutually repugnant, the two policies must be treated as both primary, with liability coverage apportioned between them.

The determination of whether Allstate, Avis, or both provided primary liability coverage must begin with an analysis of the provisions of the insurance policies. *See United States Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc., supra; see generally Guaranty National Insurance Co. v. Ohio Casualty Insurance Co., supra.*

Here, the policy issued by Allstate provided in pertinent part:

If There Is Other Insurance

If an insured person is using a substitute auto or non-owned auto, our liability insurance will be excess over other collectible insurance.

The Avis rental agreement provided in pertinent part:

The coverage provided by [Avis] shall be excess over any applicable insurance available to [the person renting the vehicle] or any other driver, from any other source, whether primary, excess, secondary or contingent in any way.

Avis argues that, "from a purely contractual standpoint," the wording of its clause makes it a "super excess" clause, which "applies only if there is no coverage whether 'primary,' 'excess,' 'secondary,' or 'contingent.'" However, the argument mischaracterizes the clause in the Avis rental agreement. Unlike the clause involved in *Brna v. Farmers Insurance Exchange, supra*, Avis' clause, like Allstate's, does not *exclude* coverage if other insurance coverage is available, but rather merely makes its coverage excess to any other coverage. In any event, the two clauses are, for practical purposes, indistinguishable: Both attempt to avoid providing primary coverage in circumstances such as those arising in this case. Thus, they are mutually repugnant. *See Brna v. Farmers Insurance Exchange, supra* (although the plaintiff's insurer tried to avoid providing even excess coverage, both companies sought to avoid primary coverage, making the provisions of the two policies mutually repugnant).

When two or more otherwise enforceable clauses contained in policies of the same type are mutually repugnant, both are void. *See Empire Casualty Co. v. St. Paul Fire & Marine Insurance Co.,* 764 P.2d 1191 (Colo. 1988); *Brna v. Farmers Insurance Exchange, supra.* Hence, the trial court erred in giving effect to the "other insurance" excess clause in the Avis rental agreement in the face of Allstate's excess clause. Instead, primary liability coverage must be apportioned between them. *See Empire Casualty Co. v. St. Paul Fire & Marine Insurance Co., supra; Brna v. Farmers Insurance Exchange, supra; Guaranty National Insurance Co. v. Ohio Casualty Insurance Co., supra.*

The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

DAVIDSON and TAUBMAN, JJ., concur.