**ALLSTATE INSURANCE COMPANY, an insurance corporation, Petitioner,**

v.

**AVIS RENT–A–CAR SYSTEM, INC., a/k/a AVIS, Inc., a corporation, Respondent.**

**No. 96SC659.**

Supreme Court of Colorado,
En Banc.

Nov. 10, 1997.

Rehearing Denied Dec. 2, 1997.

Walberg & Dagner, P.C., Deana R. Dagner, Matthew A. Holmes, Englewood, for Petitioner.

Nathan, Bremer, Dumm, & Myers, P.C., Ellis J. Mayer, Denver, for Respondent.

Kennedy & Christopher, P.C., John R. Mann, Denver, for Amicus Curiae Budget Rent–A–Car, Inc.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *Avis Rent–A–Car System, Inc. v. Allstate Insurance Company,* 937 P.2d 802 (Colo.App.1996). Allstate Insurance Company (Allstate) requests us to void the excess clause in the Avis Rent–A–Car System, Inc., (Avis) rental agreement and enforce the excess clause in the Allstate policy. We decline. The court of appeals held that Allstate and Avis each had issued liability coverage for the property damage caused by the driver of the rented automobile, that the excess clauses contained in the policies of both companies conflicted with each other and were unenforceable, and that both insurers must respond as co-primary to cover the loss. We affirm the judgment of the court of appeals. We determine that the competing excess clauses violate Colorado public policy and conclude that the loss must be apportioned between the insurers on a co-primary basis.

## I.

On July 2, 1994, Chinh Viet Pham (Chinh) was driving a rented Avis 1994 Oldsmobile Achieva when he struck a 1988 Eagle 15 bus head-on, causing property damage. The record before us does not disclose the amount of the loss. In this declaratory judgment action, each insurer attempted to have the other's coverage be declared as primary and its own coverage excess.

The Colorado Auto Accident Reparations Act (CAARA), section 10–4–705(1), 3 C.R.S. (1997), mandates that:

Every owner of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of this part 7 covering the said motor vehicle....

The Avis rental agreement covered Chinh with regard to "liability for ... damaging the property of someone other than the driver and/or the renter up to the minimum financial responsibility limits required by applica-

ble law." Thus, the Avis policy covered Chinh's property damage liability up to $15,000. *See* § 10–4–706(1)(a), 3 C.R.S. (1997). Chinh's policy with Allstate also covered property damage arising from his liability for operation of a non-owned automobile. The record does not disclose any of the limits of the Allstate policy.

Both coverages contained substantially similar excess insurance clauses which sought to compel the other insurer to respond as the primary insurer. Avis is self-insured under the act; the coverage conferred through its rental agreement provided that:

The coverage provided by [Avis] shall be excess over any applicable insurance available to [the driver], from any other source, whether primary, excess, secondary or contingent in any way.

The Allstate policy contained an excess clause which stated that:

If an insured person is using a substitute auto or non-owned auto, [Allstate's] liability insurance will be excess over other collectible insurance. If more than one policy applies on a primary basis to an accident involving your insured auto, [Allstate] will bear [its] proportionate share with other collectible liability insurance.

In its ruling, the district court relied on 1992 amendments to CAARA to hold that the renter's non-owned automobile liability coverage provided by Allstate must respond as primary. Allstate contended on appeal that Colorado law requires the liability coverage of the car owner always to respond as the primary insurer and forbids Avis from including an excess clause in its rental car liability coverage.

In reversing the district court, the court of appeals concluded that the Avis and Allstate excess clauses canceled each other as mutually repugnant, that both coverages were in effect up to their full policy limits, and that each insurer was required to respond as primary to bear its share of the loss due to the liability of their insured. We agree.

## II.

We conclude as a matter of Colorado public policy that the competing excess clauses in the Allstate and Avis policies are unenforceable. Both insurers must bear their share of the actual loss on a dollar-for-dollar basis until the limits of one of the policies is exhausted; the second policy must continue to pay to its limits or until the loss has been fully compensated, whichever occurs first.

## A.

### *Liability Coverage Under CAARA*

The Colorado General Assembly adopted CAARA in 1973 as part of a sweeping reform requiring minimum no-fault insurance and mandatory minimum liability insurance for automobiles. *See* Committee on Automobile Insurance, Colorado Legislative Council, Report to the Colorado General Assembly, Res. Pub. No. 190 (1972) (Committee Report). CAARA'S purpose is to: (1) avoid inadequate compensation to victims of automobile accidents; (2) require registrants of motor vehicles in the state to procure insurance covering liability arising out of ownership or use of such vehicles; and (3) provide benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles. *See* § 10–4–702, 3 C.R.S. (1997).

To achieve these goals, CAARA changed the state's compensation scheme by replacing parts of the common law tort liability system with minimum required no-fault insurance. This coverage, known as Personal Injury Protection (PIP), is provided to the injured party by his or her own insurance company regardless of "fault." Committee Report at 5. PIP coverage applies not only to the named insured, but also to members of the automobile owner's family, passengers of the owner's automobile, and pedestrians in accidents involving the automobile. *See* § 10–4–707(1)(a)-(c), 3 C.R.S. (1997). PIP coverage

includes compensation for medical, rehabilitative, income loss, and death benefits. *See* § 10–4–706(1)(b)–(e), 3 C.R.S. (1997).

While PIP coverage was a primary focus of the statutory reform, the General Assembly also intended to retain features of pre-existing tort liability law while prescribing minimum liability coverage. Committee Report at 5, 8. It chose in CAARA to mandate minimum coverages not only for PIP benefits but also for tort liability for bodily injury or death and for property damage arising from the use of a motor vehicle. *See* § 10–4–706(1)(a), 3 C.R.S. (1997). The liability coverage mandated by CAARA provides personal injury compensation based on the fault of the tortfeasor when PIP benefits are inadequate to compensate for the loss. Committee Report at 5. For bodily injury or death, the mandatory coverages are $25,000 for any one person in any one accident and $50,000 for all persons in any one accident; for property damage, the coverage must be at least $15,000 for any one accident. *See* § 10–4–706(1)(a), 3 C.R.S. (1997). Because PIP coverage does not include property damage, CAARA retains a fault-based liability coverage compensation system for all property damage claims. *See id.;* Committee Report at 15.

Though the legislature in CAARA instituted mandatory coverage for both no-fault PIP insurance and legal liability insurance, it treated these coverages separately under the act. In *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976), we ruled that CAARA section 10–4–707(4) [1] required the operator's PIP coverage always to be primary regardless of the existence of any other coverage.

The statutory language which is in question here is the extent of "all coverages" as it relates to primary coverage by the operator's policy.... The reasonable construction of section [10–4–707(4) ] is that

---

**1.** Section 10–4–707(4), 3 C.R.S. (1997) provides:

When an accident involves the operation of a motor vehicle by a person who is neither the owner of the motor vehicle involved in the accident nor an employee of the owner, and the operator of the motor vehicle is an insured under a complying policy other than the com-

plying policy insuring the motor vehicle involved in the accident, *primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the policy insuring the said operator ... and any policy under which the owner is an insured shall afford excess coverage.*
(Emphasis added.)

the phrase "all coverages" is limited to those coverages providing PIP benefits under subsections [10–4–706(1)(b) to 10–4–706(1)(e)]. Subsection (4) cannot be extended by implication to every coverage that may be included in the policies. The contrary construction contained in the offending regulation does not conform to the stated legislative purpose of the Act, is not consistent with all other portions of the Act, and changes longstanding insurance practices.

*Id.* at 283–84, 552 P.2d at 304. The legislature has not chosen explicitly or by clear implication to change this construction of CAARA in the twenty years since we announced *Barnes.*

■ Thus, when an accident involves a driver who is not the owner of the vehicle nor an employee of the owner, the operator's policy is primary with regard to PIP benefits only. Our analysis in *Barnes* was supported by the legislative history of the act, which expressly indicated that the legislature intended that first-party PIP coverage be primary but contained no corresponding requirement for liability coverage. *See* Committee Report at 7 (*"First Party Coverages* ... if a person who has a complying policy is operating a vehicle other than his own or his employer's, the operator's policy is primary.").

■ Contrary to Avis' successful argument in the district court, Colorado law does not require Allstate's liability coverage for non-owned automobiles to respond as primary. The court of appeals correctly held that nothing in the plain language of section 10–4–707, as amended in 1992, contains a provision overruling *Barnes.* The amendments to subsection (1) and subsection (5) make no reference to subsection (4) and contain no identifiable language altering *Barnes.* *See* ch. 20, sec. 3, § 10–4–707, 1992 Colo.Sess. Laws, 1781, 1784. The district court determined that the 1992 amendments may have overruled *Barnes* inadvertently. We will not infer that the General Assembly intended to abrogate our decisions unless it has done so expressly or by clear implication. *See Vaughan v. McMinn,* 945 P.2d 404, 410 (Colo.1997).

■ We agree with Allstate that Avis must comply with CAARA by carrying minimum liability coverage for its rental cars. Under section 10–4–705, 3 C.R.S. (1997), every owner of a car in Colorado, including rental car companies, must carry minimum insurance coverage under the Act:

> **Coverage Compulsory.** (1) Every owner of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of this part 7 covering the said motor vehicle....

Section 10–4–706(1)(a), 3 C.R.S. (1997), sets forth statutory minimums for liability coverage, including property coverage for "damage arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of fifteen thousand dollars in any one accident." In conformity with the act, Avis must carry at least $15,000 in property damage liability insurance for the use of each of its rental cars. Allstate insists that its excess clause must be given effect and that the Avis excess clause must be negated as an impermissible attempt to dilute, condition, or limit coverages mandated by CAARA. *See Bukulmez v. Hertz Corp.,* 710 P.2d 1117, 1120 (Colo.App.1985), *rev'd in part by, Blue Cross of W. New York v. Bukulmez,* 736 P.2d 834 (Colo.1987). But the Avis coverage was in effect under the act, and Allstate wrongly contends that the plain meaning of sections 10–4–705 and 10–4–706(1)(a) requires the Avis liability insurance always to be "primary" and the Allstate coverage to be "excess."

■ We must give effect to every word of a statute, if possible, and cannot presume that the General Assembly used distinctions in language idly. *See Colorado Ground Water Comm'n v. Eagle Peak Farms,* 919 P.2d 212, 218 (Colo.1996); *McMillin v. State,* 158 Colo. 183, 185, 405 P.2d 672, 674 (1965). The wording distinctions utilized here are meaningful. Under section 10–4–707(4), with regard to PIP benefits, "primary coverage ... shall be afforded by the policy insuring the

said operator ... and any policy under which the owner is an insured shall afford excess coverage" when a person is driving a non-owned automobile. In marked contrast, the operative term "primary coverage" is not utilized in the context of minimum liability coverage within section 10–4–706(1)(a) or any other applicable section of CAARA. The legal liability provisions of CAARA, as opposed to the no-fault provisions, do not specify who must carry the primary coverage.[2]

## B.

### Competing Excess Clauses

■ Here the insured person held two policies covering the loss caused by his operation of the rental car, yet each insurer claimed that its excess clause required the other to respond first. Normally, an excess clause attempts to shift the priority of payments as between coverages when two or more policies apply to the liability. *See Western Cas. & Sur. Co. v. Universal Underwriters Ins. Co.*, 232 Kan. 606, 657 P.2d 576, 578 (1983) (" 'Other insurance' [clauses] ... seek only to establish priority as to which policy should be exhausted first in satisfying the liability."). When one insurance policy is "primary" and the other policy is "excess," the primary insurer pays for damages up to the limits of its policy; when that policy is exhausted, the excess insurer covers any remaining damages up to the limits of its policy. *See* Appleman, *Insurance Law and Practice* § 4909 (1981) (explaining that excess clause triggers coverage only for liability above the maximum coverage of the primary policy or policies).

■ While Colorado recognizes a strong policy of freedom of contract, *City & County of Denver v. District Court*, 939 P.2d 1353, 1361 (Colo.1997), and while we must construe contracts in a way that best effectuates the intent of the parties and allows each party to receive the benefit of the bargain, *id.*, where the terms of applicable contracts are ambiguous they must be strictly construed against the parties drafting the contracts. *See USF & G v. Budget Rent–A–Car*, 842 P.2d 208, 211 (Colo.1992).

■ Any ambiguity in the operation of the excess clauses must be resolved against the insurers and in favor of the insured. If literal effect were given to the Allstate and Avis excess clauses, no coverage for the liability in this accident would apply. Because neither policy would cover the loss, an unintended consequence or absurdity contrary to public policy would result. *See Allstate Ins. v. Frank B. Hall & Co.*, 770 P.2d 1342, 1345 (Colo.App.1989); 7A Am.Jur.2d *Auto Ins.*, § 434 (1980 & Supp.1996). We have previously ruled that conflicting excess clauses in insurance policies cannot be given effect. *See Empire Cas. Co. v. St. Paul Fire & Marine*, 764 P.2d 1191, 1199 (Colo.1988); *see also Brna v. Farmers Ins. Exchange*, 897 P.2d 851, 854 (Colo.App.1994); *Allstate Ins. v. Frank B. Hall & Co.*, 770 P.2d 1342, 1345 (Colo.App.1989).

We need not take sides in this "contest between insurance companies" where each side seeks to compel the other to pay first. *Continental Cas. Co. v. Weekes*, 74 So.2d 367, 369 (Fla.1954). As the Supreme Court of New Jersey observed, the question of whether the particular insurance is primary or excess "is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk." *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 N.J. 554, 147 A.2d 529, 534 (1959).

■ When insurers compete against each other to trump the other's excess clause they undermine the fundamental purposes of CAARA. The first purpose of CAARA is to avoid inadequate compensation to victims of automobile accidents; the second is to require registrants of motor vehicles in the state to procure insurance covering legal liability for owned automobiles; the third is to provide benefits to vehicle occupants and others who are injured. § 10–4–702, 3 C.R.S.

---

2. In *Barnes*, we noted that a provision similar to the Allstate excess clause was generally in use in the insurance industry. *See Barnes*, 191 Colo. at 282, 552 P.2d at 303. However, we did not in that case deal with competing excess clauses, and we did not hold that the liability coverage provisions of CAARA specified the automobile owner's coverage to be always primary when two coverages exist.

(1997). In each of these purposes, CAARA contemplates that insurers will act quickly and fairly to provide compensation for the loss so that delayed payment and continued uncertainty will not prolong the travail of both the injured and the insured parties. Excess clauses that give rise to disputes between insurers frustrate prompt payment of claims, contrary to CAARA.

 Under the circumstances here, we look to the reasonable expectation of the insured in operating the rental car that the Avis and Allstate policies would be effective in responding immediately, fairly, and jointly to cover the loss up to the total combined limit of the two policies. Given CAARA's goals and absent an applicable statutory provision or other compelling public policy basis, we refuse to elevate one excess clause above the other. We hold that both policies were in effect and that the actual loss must be shared between them on a co-primary basis. Each insurer must pay up to the full limit of its separate policy to the extent necessary to fully compensate the loss.

## C.

### Apportionment

 When conflicting excess clauses are inoperative, the loss must be apportioned between the insurers. *See Empire Cas.,* 764 P.2d at 1199; *Allstate Ins. v. Frank B. Hall Co.,* 770 P.2d at 1347; *Universal Underwriters,* 657 P.2d at 580. Three methods exist for apportionment between co-primary insurers: (1) proration in accordance with the proportionate policy limits of the respective policies (method one); (2) apportionment on an equal basis up to the applicable policy limits (method two); and (3) apportionment based on the loss which each insurer would sustain without the other (method three). *See Empire Cas.,* 764 P.2d at 1199–1200. The Allstate policy states that it will "bear our proportionate share with other collectible liability insurance" when more than one policy applies on a primary basis.

 We hold that Colorado public policy favors and requires the second method for apportionment: apportionment on an equal basis up to the policy limit of each policy.

Though method one is the majority rule, other states have recently recognized that method two is superior because it is easy to administer, comports with justice, and more correctly approximates the coverage contemplated by each insurer. *See Universal Underwriters,* 657 P.2d at 581–82; *Carriers Ins. Co. v. American Policyholders' Ins. Co.,* 404 A.2d 216, 221–22 (Me.1979).

The majority rule, which apportions the loss in proportion to the respective policy limits, has been criticized because "[i]t is commonly known that the cost of liability insurance does not increase proportionately with the policy limits." *Cosmopolitan Mut. Ins. Co.,* 147 A.2d at 534. For this reason, the majority rule may unfairly discriminate against a larger policy because it would require the larger policy to bear a much greater share of relatively small claims. *See American Policyholders,* 404 A.2d at 222 ("[T]he majority rule amounts to no more than an unacceptable subsidy from the high-coverage to the low-coverage carrier."). The majority rule also may have adverse effects on the consumer, such as raising the cost of high-risk coverage and discouraging insurers from offering higher policy limits. *See Universal Underwriters,* 657 P.2d at 581–82; *American Policyholders,* 404 A.2d at 222.

The third method, apportionment based on the losses each insurer would have incurred in the absence of the other, corresponds with method two when the total loss does not exceed the limits of either policy. In that instance, each insurer would be liable for one-half of the damages. But when the total loss exceeds the limits of one policy and not the other, method three becomes unwieldy, requiring calculation of a ratio between the losses each policy would have covered.

We reject method one and method three and adopt method two because of CAARA's preference for immediate, fair, and adequate response by insurers to losses caused by their insured. Method two is prone to the least dispute, is straightforward in its application, and is equitable. It calls upon both insurers to respond equally until the policy with the lower limit is exhausted; then the

second policy covers the rest of the actual loss up to its limits.

## III.

Accordingly, we affirm the judgment of the court of appeals and return the case to that court with directions that the trial court enter judgment consistent with this opinion. We conclude that Allstate and Avis are co-primary insurers for the loss caused by the operation of the rental car and must contribute dollar-for-dollar, each paying one-half of the loss until one policy is exhausted. The other must then pay until the loss is fully compensated or its policy is exhausted.

Justice MULLARKEY concurs in the Opinion of the Court as to Parts I, II.A., II.B., and III, but does not participate as to Part II.C.